Elliott vs. The State.

CHARLES F. ELLIOTT, plaintiff in error, vs. THE STATE, defendant in error.

1. The grounds of alleged error, set forth in the motion for a new trial, must be identified by the Judge as true, or they will not be considered on a writ of error based thereon to this Court. The usual certificate to the bill of exceptions is not sufficient. (R.)

2. In a case where, if death had ensued, the defendant would only have been guilty of manslaughter, he cannot be convicted of an assault with intent to commit murder, and the Court, on request, should so have charged the jury. (R.)

Criminal law. Assault with intent to murder. Bill of exceptions. Practice in the Supreme Court. Malice. Before Judge HOPKINS. Fulton Superior Court. October Term, 1871.

For the facts of this case, see the decision.

D. F. & W. R. HAMMOND; PEEPLES & HOWELL, for plaintiff in error.

J. T. GLENN, Solicitor General; GARTRELL & STEPHENS, for the State. 1st. The verdict of the jury was in accordance with the law, and was sustained by the evidence, and ought not to be disturbed by this Court. 2d. The Court was right in charging the jury that, "in cases of assault, as in all other offenses, if several act in concert, encouraging one another and co-operating, they are all equally guilty, though only one makes the actual assault: 33 Ga. R., 131; 21 Ga. R., 221; Code, 4240; 30 Ga. R., 757. 3d. It is immaterial whether the prisoner is charged in the indictment as principal in the first or second degree, if he was found aiding and abetting the act: 28 Ga. R., 604. 4th. Malice is implied from the recklessness of the act, and it is not necessary to constitute malice that the prisoner should know the person against whom it is directed; 39 Ga. R., 31; 26 Ga. R., 275. 5th. The Court was right, in his construction of sections 4264 and 4268 of the Code, also of section 4265; section

4267 did not apply to the case, but if it did, the Court's construction of it was right, and the charge, as given, did not injure the defendant: 22 Ga. R., 234; 18th *Ibid.,* 708; 2 Bishop's Crim. Law, sec. 638.

WARNER, Chief Justice.

The defendant was indicted for an assault, with intent to murder. On the trial of the case the jury found the defendant guilty. A motion was made for a new trial on the several grounds stated in the motion therefor, as contained in the rule *nisi.* First, because the verdict of the jury was contrary to law. Second, because the verdict of the jury was contrary to the evidence, and decidedly against the weight of the evidence. Third, because the Court erred in charging the jury, and in refusing to charge the jury as requested as set forth in the motion for a new trial. The Court overruled the motion for a new trial, and the defendant excepted. On what ground the Court overruled the motion for a new trial does not appear. The error assigned in the bill of exceptions is the overruling the motion for a new trial. Whether the Court charged the jury, or refused to charge the jury as assumed in the motion for a new trial, does not affirmatively appear; and it may be that the Court overruled the motion for a new trial because the facts assumed therein in relation to the charge of the Court, and refusal to charge as requested, were not true. But it is said the certificate of the presiding Judge furnishes plenary evidence of the truth of the grounds of error stated in the motion for a new trial. The certificate of the Judge certifies that the foregoing bill of exceptions is true, and contains all the evidence material to a clear understanding of the errors complained of. What was the exception to the ruling of the Court, and what was the error complained of? The exception to the ruling of the Court and the error complained of was the overruling the motion for a new trial, and the Judge certifies that the motion for a new trial was made and overruled, and that the bill of exceptions contains all the evidence material to a clear

Elliott *vs.* The State.

understanding of the errors complained of—that is all. Whether the Court charged the jury, or refused to charge the jury as stated in the motion, does not affirmatively appear in the bill of exceptions, and, therefore, the certificate of the Judge does not cover it. The certificate of the Judge only certifies that the motion for a new trial was overruled, and that the evidence contained in the bill of exceptions is all that is necessary to a clear understanding of the errors complained of in overruling the motion, on the ground that the verdict was contrary to that evidence, and to the law under that evidence. The bill of exceptions must affirmatively disclose the error assigned: *Doebler vs. Waters*, 30 *Georgia Reports*, 344; *Cameron vs. Ward*, 22 *Georgia Reports*, 169. *In McLain & West vs. Dinsmore & Kyle*, 30 *Georgia Reports*, 724, this identical question was considered and decided. In delivering the opinion of the Court, Lumpkin, Judge, said that the case furnished another fit occasion to remind the bar of the necessity of taking the precaution to obtain the acknowledgment of the presiding Judge, that the *grounds* taken on the motion for a new trial are *true*. Not that the motion was made. upon the grounds stated in the rule; but that *the statements in the grounds are true*. The result, therefore is, that in the ease now before the Court, no other errors can be considered but those which relate to the overruling the motion for a new trial, on the grounds that the verdict of the jury was contrary to the evidence contained in the bill of exceptions, and contrary to the law under that evidence.

If the Court did charge the jury, and did refuse to charge the jury as requested, as assumed in the motion for a new trial, that should have been distinctly stated in the bill of exceptions, so that the presiding Judge could have certified whether it was true or not. The entire Court are unanimous in their judgment as to the rule of practice, but inasmuch as no objection was made, on the argument of this case before this Court as to the assignment of errors, as alleged in the motion for a new trial, the majority of the Court place their judgment of concurrence in the reversal of the judgment of

the Court below on that ground.  I place my judgment of reversal upon a much broader ground.  Was the verdict of the jury contrary to law, under the evidence contained in the bill of exceptions?  The defendant was charged with an assault with an intent to murder.  In order to make out the offense, the evidence must show that the assault was made under such circumstances that, if death had ensued, the killing would have been murder, which necessarily would have involved the question of malice, either express or implied. If death had ensued, and the homicide would only have been manslaughter, then the defendant cannot legally be found guilty of an assault with intent to murder.

What are the material facts, as disclosed by the evidence in the record?  The defendant is the brother-in-law of Miss Turner, a young lady about eighteen years old, who lived with her parents in the city of Atlanta.  She had received a communication through the post-office, written over a fictitious name, requesting her to meet a gentleman on the street at a certain time; this she communicated to her mother and brothers; her mother threw it in the fire.  Shortly afterwards a proposition was made to her through a negro man and his wife, to meet a gentleman on the street at a certain time and place, who desired to make her acquaintance.  This she communicated to her mother and family.  The name of the gentleman was not disclosed.  Her brothers desired her to go to the place designated, and they would go with her and find out who it was that was sending such insulting messages to their sister.  She went, her brothers and the defendant, her brother-in-law following a short distance behind, when Clark, the prosecutor, made his appearance, piloted by the negro man and his wife, through whom the communications to her had been made.  She says he took hold of her hand, put it through his arm and pulled her along.  The prosecutor says she took his arm, and he asked her how long she could stay out.  She says he asked her how long she was going to stay out that night, and would she go to his room or to aunt Sallie's, the negro's house, and also said, "Let us walk fast."

Elliott *vs.* The State.

About that time the defendant and her brother came up, and her brother said, "Turn my sister loose," and repeated it the second time, and then commenced firing upon him, wounding the prosecutor in two places. The evidence is not clear that the defendant fired at all, but he was there and was evidently acting in concert with the brother, who did shoot the prosecutor. The prosecutor denies writing the note through the post-office, but admits sending the messages through the negroes, and that his object in meeting the young lady was to have criminal intercourse with her.

Such, in brief, are the substantial facts and circumstances under which the shooting took place. If death had ensued, would the killing have been murder, or manslaughter, under the law? There could not have been any express malice against the prosecutor, for the defendant did not know who he was—his name had been carefully concealed. Will the law imply malice under the provoking circumstances attending this transaction?

In all cases of voluntary manslaughter there must be some actual assault upon the person killing or an attempt by the person killed to commit a serious personal injury on the person killing, or *other equivalent circumstances*, to justify the excitement of passion and to exclude all idea of deliberation or malice either express or implied: Code, section 4259. Were not the circumstances under which the shooting was done equivalent to those specially mentioned in this section of the Code to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied. The brother and brother-in-law of their sister discover, for the first time, the individual who has been sending insulting messages to her, and who was then in the very act of carrying out his purpose, as he himself admits, to invade her chastity. If this would not justify the excitement of passion in the breast of a brother or brother-in-law of a young sister who had a right to claim their protection, what would? But it is said the expressions uttered by the defendant to the prosecutor, in his room shortly after the shooting,

" that he had received a dose, and when his brother came he would finish him or finish it," is evidence of malice. On the contrary, it shows that the defendant was still under the excitement of passion aroused and produced by the conduct of the prosecutor toward his sister, and that his words gave expression to it when he came into his presence.

In my judgment, the evidence in the record does not make such a case that if death had ensued, the defendant would have been guilty of murder under the law, and, therefore, he should not have been found guilty of an assault with intent to murder. If the jury had found the defendant guilty of an assault only, then there could have been no objection to the verdict. Whilst the Courts cannot, and should not, recognize the right of any person to take the law into their own hands for the purpose of redressing their own wrongs, still the seducer, when he attempts to invade female chastity, should distinctly understand that he encounters all the peril incident to such an attempt on his part. If the prosecutor in this case had confined himself to the pursuit of his legitimate and lawful business, instead of seeking to gratify his carnal appetite in forbidden pastures, he would not probably have been injured. I am, therefore, of the opinion that a new trial should be granted in this case, on the ground that the verdict of the jury is contrary to law, as disclosed by the evidence in the record.

Let the judgment of the Court below be reversed.

McCay and Montgomery, Judges, concurring.

The bill of exceptions in this case contains no history of the trial, no statement of any of the rulings of the Court in the progress of the cause. It is simply a statement that the case was tried, a verdict had, a motion made for a new trial, and that the Court refused to grant the new trial. We are left, therefore, to the record *alone* to discover the errors, if any, of the Court. That record is simply the rule *nisi* and the judgment of the Court refusing the new trial. The rule *nisi* calls on the State to show cause why a new trial should

not be granted, on the following grounds: 1st. Because the Court did so and so. 2d. Because, etc. The plaintiff has a right to put in his motion any ground for a new trial that he may think he has, and, though some of the Judges are in the habit of refusing even the rule *nisi*, unless the facts stated are true, yet this is not always the case, and is, in fact, only a new practice. We have frequently before us judgments refusing to make such rules *nisi* absolute, on the ground that the facts stated are not true. Most generally, however, the judgment simply grants or refuses the new trial, giving no reasons for it. It may be that the reason for refusing is, that the grounds taken are untrue. How are we to know? But in this bill of exceptions there is a distinct assignment of error, on this ground, taken in the rule *nisi*, and the parties went into the argument before this Court that this assignment was supported by the record. Judge MONTGOMERY and myself think it was too late to make this objection in the argument. It should have been done on the reading of the bill of exceptions, the real objection being that the bill of exceptions was not sustained by the record. We will not, therefore, in this case, refuse to consider the points.

As this was a case of assault with intent to murder, it is clear that if there was no malice, express or implied, the defendant was not guilty. The Court was asked, in substance, so to charge, and he refused to do so. We think that was error. The evidence is such as that the jury might have found the shooting to be the result of that sudden heat of passsion which does not allow the voice of reason and justice to be heard, and that if the shooting had produced death, the offense would have been manslaughter.

We cannot agree with the Chief Justice that the evidence fails to show such malice, as if the charge had been given the jury would have been bound to find the defendant not guilty in any event. We think there is plenty of evidence to justify a verdict of guilty, even under a proper charge. The facts that this lady went to the rendezvous with the knowledge of her friends—that they followed her, armed—that this

defendant was one of the crowd—that he displayed great malignity of feeling when the victim of their violence was apparently on his death-bed, and that he was armed, are, in our judgment, facts that would fully justify a verdict, even had the law been properly given.

But as the jury were not given the law of malice, as requested, we think there ought to be a new trial. The law is clear that, if there be not such malice as would make the shooting murder, had death ensued, but only manslaughter, the defendant is not guilty.