RICHARDSON *vs.* THE STATE OF GEORGIA.

1. In a criminal case the judge should instruct the jury that the evidence, to authorize a conviction, should be of such conclusive character and tendency as to exclude reasonable doubt; and a failure so to charge will cause a new trial, although the attention of the court may not have been called to the omission.

(*a.*) Previous cases considered and reviewed, 7 *Ga.*, 3, 13; 19 *Id.*, 1, 2, 6, 7; 28 *Id.*, 200, 216; 35 *Id.*, 241, 242; 41 *Id.*, 485, 505.

(*b.*) In this case the omission was calculated to injure defendant.

2. It was error in this case to charge that "if the defendant came upon the prosecutor and his wife in the act of adultery suddenly, with his passions aroused, and being so enraged at seeing the acts of the parties, kills the party then and there, it would not be murder, but manslaughter," and that "the jurors are the judges of all these circumstances." Such charge was not based on the evidence in the case.

(*a.*) Such charge was not good law. The case put in this charge, under §4334 of the Code would have justified the killing of the adulterer taken in the act. A husband has as much right to protect his wife from this as from other wrongs; and, if necessary to prevent its perpetration, he may take life, and it will not be murder.

(*b.*) The case made here might or might not have amounted to voluntary manslaughter, according to the circumstances. At all events, they should have been submitted to the jury, whose province it was to say whether they stood upon the same footing of reason and justice as all other instances enumerated in the Code as justifying a homicide, or whether the shooting was the result of that sudden and violent impulse of passion, supposed to be irresistible, excited either by an actual assault, or an attempt

to commit a serious personal injury upon the defendant by the prosecutor, or other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice; whether the shooting was under the influence of passion, or in a spirit of revenge.

(c.) Opinion of Jackson, Chief Justice, in 66 *Ga.*, 90, considered and approved.

September 25, 1883.

Criminal Law. Charge of Court. Murder. Adultery. Before Judge BoWER. Dougherty Superior Court. April Term, 1883.

Reported in the decision.

L. ARNHEIM, for plaintiff in error.

J. W. WALTERS, solicitor general, for the state.

HALL, Justice.

The first question made by this record is whether, in a criminal trial, the judge, in his charge to the jury, should instruct them that the evidence, to authorize a conviction, should be of so conclusive a character and tendency as to exclude reasonable doubt; and failing so to charge, whether the omission is such error as to require the verdict to be set aside and a new trial granted, when his attention was not called to it and no request was made by the defendant or his counsel to supply it. Under the several rulings of this court, the point here made is not free from difficulty. In *Studstill's* case, 7 *Ga.*, 3, 13, it is intimated rather than decided that, where the court charges the jury correctly upon a point of law, it is no error that the judge did not specify more minutely the shades of difference, where no request is made by counsel for this purpose. At the same time and in this immediate connection, it was held that the presiding judge had the right, and it was his duty to declare, what the law was upon a given state of facts. In *Bowie's* case, 19 *Ga.*, 1, 2, 6 and 7, it is said that

"the mere omission by the court to charge a jury on a point, is not, in general, a ground on which a new trial may be demanded. The point ought, at least, to be such that the law on it is somewhat doubtful or abstruse. If it be not such a point, why should we say that the jury, a body which indisputably in criminal cases is made the judges of what the law is, did not follow the law" (citing Graham on New Trials, 122); "and the rule that, in considering a person's admission, all of the admissions are to be taken together, is one so obvious that a jury would, of themselves, it is to be presumed, follow it."

In *Brown's* case, 28 *Ga.*, 200, 216, where the judge failed in his charge to point out some nice shades of difference in grading the homicide, it was held that "if the court fail or omit to charge the jury in regard to any particular point claimed by counsel to be involved in the cause, and the counsel make no request of the court in writing to charge the jury on such point, they must be held to have been satisfied with the charge as given."

In *Farris's* case, 35 *Ga.*, 241, 242, where the judge omitted to charge a clause of the Code which could not benefit the defendant, it was held to be no ground of complaint, and if deemed material, counsel should have suggested such additional charge as was desired.

All of these decisions were made prior to the ruling by this court that the jury in criminal cases should take the law from the court. Afterwards, the case of *Hill*, 41 *Ga.* 485, 505, came up, in which it was held that "where the omission to give a charge by the court was supplied by the judge giving a more favorable one than the law of the case required, there was no error."

Lochrane, C. J., who delivered the opinion in that case, remarked: "We have not held that the judge below must charge, in all cases, upon the various grades of homicide, but have qualified this general rule by this principle, that in cases where the facts justify or require such a charge, it shall be given. With or without request, it is the

duty of the court to present to the jury all the law applicable to the case, and if facts, however slender, support theories of the defence, involving any or all the grades of homicide, they must be given in charge. Errors of omission are as fatal as errors of commission. The judges below are bound to know the law applicable to the case, and must give it in charge to the jury. This is imperative and overwhelming in its conviction and direction of duty."

None of these cases deal directly with the precise question here made. One of them (Bowie's case) does so argumentatively, and would seem to repel the idea that it is incumbent upon the presiding judge to give in charge to the jury, who are made the judges of the law in such cases, the ordinary and obvious principles which lead to the conclusion in such trials, but that this should only be done where the law of the case is "somewhat doubtful or abstruse," while it is clearly ruled in Studstill's, "that it is the duty of the judge to declare what the law is on a given state of facts," with the implied qualification that the charge need not specify minutely fine shades of difference, where no request is made by counsel for the purpose." The cases of Brown and Farris stood upon their own circumstances. In the former the court omitted to specify nice shades of difference in grading the homicide, and in the latter a charge more favorable to the defendant was given than the law authorized upon the point in question. It may be true that what fell from the Chief Justice, in Hill's case, was *obiter*, but we think the rule announced was the logical conclusion from the state of the law as then held by the court, and that, irrespective of this modification of the old rule as to the source from which the jury must take the law in criminal cases, the principle there announced is sound.

We are satisfied that the omission in this case was the result of inadvertence, and that had the judge's attention been called to it, he would have promptly supplied it.

But the jury did not know from what cause it resulted; they had perhaps heard it given in all other trials had before them at that term of the court, and may have concluded, from its absence in this instance, that it was not applicable, and that they were not authorized to give the defendant the benefit of any reasonable doubt. Be this, however, as it may, we are satisfied, from the character of the charge upon the point on which this defence turned, and which we shall presently see, laid down a more rigid rule than our law warrants, that this omission was detrimental to this defendant, and that his case has not been fairly submitted to the jury; and so believing, we hold that a new trial should have been ordered upon this ground.

2. There was evidence in the case to show that the prosecutor had committed adultery with defendant's wife; that notwithstanding he had promised to abandon this intercourse, he was nevertheless, on the very day of the shooting, found associating with this woman, and bestowing favors upon her, which would lead to the conclusion that it was his purpose to renew this illicit cohabitation, and that this fact was communicated to the defendant, and that the rencontre ensued upon their first meeting afterwards.

On this ground of defence, the court charged the jury that, " if the defendant came upon the prosecutor and his wife in the act of adultery suddenly, with his passions all aroused, and being so enraged at seeing the acts of the parties, kills the party then and there, that it would not be murder but manslaughter," and that, " the jurors are the judges of all these circumstances." As embodying an abstract proposition, we do not consider this charge correct, under the laws of this state, as will be presently shown. But apart from this, the case put in this charge is entirely outside of the defence insisted on. There was no evidence tending to show that the prosecutor had ever been caught by the defendant in the act of adultery with his wife. So the charge as given rests on no foundation, and is wholly

inapplicable to the facts proved. In every sense of that term, it is inapposite, and was wide of the mark at which it was aimed, and failed to approach the principle of the defence actually set up.

The case put in this charge would, under section 4334 of our Code, have justified the killing of the adulterer taken in the act. There is not a case in our reports, from that of *Biggs* in 29 *Ga.*, 723, to that of *Stewart* in 66 *Ib.*, 90, that lays down a different rule. It must be remembered, too, that several of these cases occurred before seduction was made a felony by our law (Code, §4371). Surely a husband has as much right to protect his wife from this as from other felonies, and if necessary to prevent its perpetration he may take life, and it will not be murder.

The case made here might or might not have amounted to voluntary manslaughter, according to the circumstances; at all events they should have been submitted to the jury, whose province it was to say whether they stood upon the same footing of reason and justice as all other instances enumerated in the Code as justifying a homicide, or whether the shooting was the result of that sudden and violent impulse of passion supposed to be irresistible, excited either by an actual assault, or an attempt to commit a serious personal injury upon the defendant by the prosecutor, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation and malice. Whether, if the defendant, upon meeting the prosecutor soon after he was informed of the renewed attempt of the latter to continue his adulterous cohabitation with his wife, was so much excited by that fact and the quarrel and rencontre that ensued upon the meeting, that his passion became irresistible and he shot under the influence of that passion, or deliberately in a spirit of revenge; if under the latter, he was guilty of the offence charged; if under the former, then he may have, without other provocation, been guilty of shooting at another not in his own defence or under circumstances of justification,

according to the principles of the Code ; if to the verbal altercation the prosecutor added an assault accompanied with blows, then the defendant, for the excess of violence used in repelling the assault, etc., may have been guilty of assault and battery. That all these several phases of the law should have been submitted to the jury, and that the charge should have covered every theory of the defence warranted by the evidence, see 29 *Ga.*, 724, 728, *Biggs vs. The State*; 30 *Ib.*, 894, 895, *Cook vs. Wood*; 43 *Ga.*, 137, *Pounds vs. The State*; 46 *Ga.*, 159, *Elliott vs. The State*; 64 *Ib.*, 453, *Hill vs. The State*; 66 *Ib.*, 90, *Stewart vs. The State*, especially the concurring opinion of Jackson, Chief Justice, to which he adheres, and in which his associates on this bench concur as containing the correct view of the law applicable to this case.

There is no other exception taken to the rulings and decisions of the lower court which we deem material.

Judgment reversed.