## NAPPER *v.* THE STATE.

1. In a case where if death had ensued the defendant would not have been guilty of murder, he could not be convicted of assault with intent to murder; but if the evidence warrants a conviction of the offense of stabbing not in his own defense or under circumstances of justification, he may be found guilty of that offense.
2. While in the present case the defendant was entitled to have this legal principle given in charge to the jury upon proper request, yet, where the entire charge shows that, though the request was not given in the language in which it was made, it was fully covered in the general charge, and the defendant had the benefit of the legal principle, a reversal will not result from the refusal to charge in the language of the request.
3. The charges complained of, when viewed in the light of the entire charge and of the evidence, furnish no ground for a reversal.
4. The verdict was not contrary to law or the evidence.

Submitted July 10, — Decided August 2, 1905.

Indictment for assault with intent to murder. Before Judge Felton. Bibb superior court. June 2, 1905.

Frank Napper was indicted for an assault with intent to murder. He was convicted, moved for a new trial, and upon the overruling of the motion excepted. The evidence on behalf of the State was, in brief, as follows: On April 16, 1905, a baptizing occurred at which a large number of negroes congregated. There was a pond on land leased by T. C. Barlow and his brother J. E. Barlow. They gave permission for the baptizing to take place there, provided the people would not go on the cultivated land. Napper and one Garden left the pond and crossed over a piece of land into the watermelon patch, pulled out a bottle of whisky, took a drink, and urinated in front of the house where T. C. Barlow's mother was, though it does not appear that she saw them.

In crossing the land they trampled upon some corn which was planted, and as they went back the two Barlows met them. J. E. Barlow asked defendant if he did not know that it was against their rules to go over the land, and he said, " No." The two were standing there arguing, and Barlow told the defendant that he did not allow any one to go there. Defendant raised his hand for something, and Barlow struck his hand and knocked it "back down," saying, "Don't raise your hand at me." Another negro named Mitchell, who was in a hack, jumped out, carrying the butt end of a whip, and saying, " Kill the damn son of a bitch. Let them go to their house and get their guns. We have got as many as anybody." J. E. Barlow started toward the house. The defendant cut T. C. Barlow with a knife, a weapon likely to produce death, the wound being very severe, causing insensibility for sometime, and causing Barlow to be confined to his bed from the injury. When the defendant raised his hand Barlow "slapped it back down." Barlow's fist was not doubled up, but his hand was open. He did not strike the defendant. J. E. Barlow testified for the State : " What caused my brother to strike the negro on the hand, I suppose the negro was raising his hand to hit him. The negro raised his hand and he put it back down, then Hamless [Mitchell] jumped out of the hack and says, 'Kill him, a damn son of a bitch.'" After the cutting the defendant and Mitchell ran away, and were afterwards caught. The evidence for the defendant was, in brief, as follows : When Barlow went up to the defendant he slapped the defendant, and when the latter stepped back he was again slapped. Barlow then kicked him. It was after being attacked, struck in the face, and kicked, that the defendant cut Barlow.

*John R. Cooper*, for plaintiff in error.
*William Brunson, solicitor-general*, contra.

LUMPKIN, J. (After stating the facts.) 1, 2. Under the decisions of this court it is well-settled law that in a case where, if death had ensued, the defendant would not have been guilty of murder, but only of manslaughter, he could not be convicted of an assault with intent to murder, though he might be guilty of the offense of stabbing not in his own defense or under circumstances of justification. *Elliott* v. *State*, 46 *Ga.* 159; *Seborn* v. *State*, 51

*Ga.* 164; *Smith* v. *State*, 52 *Ga.* 88.   On the other hand, it would have been error to charge that if the defendant cut Barlow with a weapon likely to produce death, under such circumstances as would have made him guilty of murder had death ensued, he would have been guilty of the offense of assault with intent to murder.   *Gilbert* v. *State*, 90 *Ga.* 691;   *Gallery* v. *State*, 92 *Ga.* 463;  *Lanier* v. *State*, 106 *Ga.* 368.   At first view there may appear to be some inconsistency in these two statements, but the conflict is only apparent and not real.   The reason which underlies both rulings shows them to be entirely consistent.   On the trial of one accused of an assault with intent to murder, the intent to kill is an essential element of the offense.   If one actually kills another with a weapon likely to produce death, and used in a manner calculated to produce that result, the law presumes an intention to kill from the fact of the killing.   Thus it has been held, that "Where one voluntarily fires a loaded pistol at another, without excuse and not under circumstances of justification, and kills the person at whom he shot, the law will hold the slayer responsible for the consequences of his act.   It conclusively presumes malice on the part of the slayer; and the grade of the homicide, so committed, will not be reduced to involuntary manslaughter, even if the intent of the slayer, under such circumstances, was to wound or cripple the deceased, and not to kill."   *Stovall* v. *State*, 106 *Ga.* 443 (3).   The law will charge an evil-doer with all the natural consequences of his unlawful act, which the act produces.   But it will not necessarily impute to him by presumption an intention to produce a consequence which did not result.   Therefore, where death does not result, the intent to kill is not matter of legal presumption, but is a matter to be found by the jury.   In determining this they may infer malice from the facts proved.   *Gilbert* v. *State*, supra.   The unlawful intent to kill being an essential ingredient of the crime of assault with intent to murder, that offense includes all the elements of murder except the actual killing.   But inasmuch as from an actual killing the intent to kill may be presumed, it does not follow that in the absence of a killing the presumption arises.

In the present case the defendant requested the following charge:   "If you believe that the defendant under the circumstances proven had killed Barlow and he would not have been

guilty of murder, then I charge you that you are not authorized to convict the defendant of the offense of assault with intent to murder." This request contained substantially the legal proposition stated in this opinion. Had it not been in effect covered by the charge given, its refusal would furnish ground for a new trial. But a careful examination of the entire charge satisfies us that it substantially covered the principle included in the request. The presiding judge defined the offense of assault with intent to murder to be "an assault with a weapon likely to produce death, with intent unlawfully, wilfully, feloniously, and of malice aforethought to kill and murder." In reference to malice as applied to the case on trial, he informed the jury that it meant "the intent to take human life unlawfully, where there are no circumstances of justification or mitigation for the act if the life should be taken as intended; it means the deliberate and intentional use of a deadly weapon for the purpose of taking human life, from whatever motive it springs, if there are no circumstances surrounding the transaction which mitigate or justify the act." He informed them that "whether there was the intent to kill and murder is a question of fact which the jury should determine by looking to all the facts and circumstances in the case, looking to the parties, the manner of the use of the weapon, if one is used, the circumstances attending its use, all the light you can get on the transaction for the purpose of determining the great question involved in the case, which is, is the defendant guilty of assault with intent to murder?" He charged them as to what would reduce a homicide from murder to manslaughter. In stating the things necessary to be proved, to warrant the conviction of the accused of assault with intent to murder, he said: "And that there were no circumstances at the time which either justified Napper in so cutting Barlow, or which had the effect of showing that he acted in a sudden heat of passion brought about in such a manner as to in any degree mitigate the result of the defendant's act." He explained to the jury the difference between the offense of assault with intent to murder and the offense of stabbing another not in one's own defense or under other circumstances of justification. At another time he said "that the offense of assault with intent to murder is based upon facts

which require as an essential, to be shown upon the part of the State, that the defendant acted without justification or mitigation in so acting and using a weapon likely to produce death and with an intent to take human life." From these quotations it will be seem that the charge was fully as favorable to the defendant as he was entitled to ask; and while the court did not give the request in the language asked, the charge did cover the substantial principle involved in it. In the light of the whole charge as contained in the record, the refusal of the request furnishes no ground for reversal.

3. The other charges complained of, when viewed in the light of the entire charge and of the evidence, furnish no ground for a reversal.

4. The verdict was not contrary to law or the evidence.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*