## 9406.  POSEY v. THE STATE.

"From the use of a deadly weapon in a manner calculated to injure, the law will presume an intention to injure; or from the use of it with an intention to kill, in a manner calculated to accomplish the intention, the law will presume that, had the killing taken place, the homicide would have been murder. But this is as far as the mere legal presumption as to malice or intent will go, on trials for assault with intent to murder. That an effect not produced, and which if produced would have constituted a different offense from that actually committed, was intended, is surely for determination by the jury as a matter of fact. The law, without the aid of the jury, can presume the malicious motive, or the intention so far as realized in the act, but not an intention beyond what was so realized."

(a) "To constitute the offense of assault with intent to murder, there must be a specific intent to kill. This intent is not necessarily or conclusively shown by the use of a weapon likely to produce death. The jury should have been given the discretion, under proper instruction from the court, to convict of a lesser offense included in the higher felony charged, if they believed that the evidence failed to show a specific intent to kill. The failure so to instruct the jury was error."
DECIDED MARCH 15, 1918.

Indictment for assault with intent to murder; from Jackson superior court—Judge Cobb.  November 17, 1917.

*Cooley & Jackson,* for plaintiff in error.

*W. O. Dean, solicitor-general,* contra.

BLOODWORTH, J.  As we view this case, the only question that it is necessary to determine is whether the judge erred in eliminating from the consideration of the jury the question of their discretion "to find a verdict in said case for the offense of assault and battery." The evidence shows that three men were traveling

7

in a buggy, and, on a certain morning between daylight and sunrise, stopped at the home of an old negro man named William Moore, the prosecutor in this case, who lived alone and was alone at the time of the assault. Moore testified in part as follows: "I saw Homer Posey on the 16th day of June this year. That is him right yonder [pointing to defendant]. I saw him at my steps. He knocked me in the head with a mattock. He come up there and I heard something at the back door, and I turned my head around and seen him standing at the steps. Mr. Tanner asked, 'What are you doing here?' I said 'I am working.' He said, 'Who are you working for?' I said, 'Working for myself.' He said, 'I will give you until night to get away from here.' I didn't know what more to say, what more to say or do. I stopped to look at them and they spoke something else, and by that time I seen the mattock coming and gave my head about that much dodge (indicating), and it dodged about half of the lick. Mr. Posey had the mattock (referring to defendant). I hadn't done or spoken a bit more to him than I had to one of you. It was a mattock, a digging and grubbing implement. You could kill a man with it. He only struck me one lick (showing the scar on his head to the jury.) This was in Jackson county. . . This occurred on Saturday morning between daylight and sunup. I was living by myself. Nobody in the house except me. . . When I was struck they just dropped the mattock down, I reckon,—just dropped the mattock down in the yard and drove off; never said a word to me. Mr. Posey said, 'I won't give you until night to leave,' and picked up the mattock and hit me on the head. I had no fuss with him. He had the mattock in his hands. It would weigh about four pounds. I could not tell you what part of the mattock he struck me with. . . The only thing Mr. Posey said was, 'I will not give you until night;' that was all. That is every word I heard him speak. He had the mattock in his hand then and hit me over the head, and didn't give me another minute." -

Jim Tanner, one of the three men traveling in the buggy with the defendant, swore: "I was there the day William Moore was struck. We came up there through the yard. Culpepper called the old darkey up, and he come out and Homer hit him,—hit him with an old mattock. The negro was not doing anything. I was sitting in the buggy. Mr. Culpepper was doing the talking—Gar-

land Culpepper. He hollered, 'Hello!' That is what I mean when I said he called him out. Garland told him to leave,—give him until night to get out. I heard Mr. Posey say, 'I will not give him that long.' That was before he hit him with the mattock. The mattock was sitting up against the lot fence. . . I am the man that is indicted with Homer Posey with assault with intent to murder on William Moore. I was with Mr. Posey that night. . . I didn't get out of the buggy. There were three of us; the other man was Garland Culpepper. He called the negro up." The defendant denied stopping at the house of the old negro, and in his statement said: "That old negro knows this morning that he don't know me,—never knowed me at the time. I didn't know there was such a negro in the world as that negro,— never seen him before until they brought him up down there with his little plaster on about the size of a quarter on the side of his head and said I knocked him in the head with a mattock." The above are all of the facts of the case necessary for a consideration of the question hereinafter discussed.

We think the judge should have allowed the jury the discretion of saying whether or not this defendant was guilty of assault and battery; for it is a well-settled proposition in this State that "the specific intent to kill is an essential ingredient of the offense of assault with intent to murder," and before there can be a legal conviction for assault with intent to murder this specific intent to kill must be shown. In *Patterson* v. *State*, 85 *Ga.* 131, 133 (11 S. E. 620), Mr. Justice Blandford said: "From the use of a deadly weapon in a manner calculated to injure, the law will presume an intention to injure; or from the use of it with an intention to kill, in a manner calculated to accomplish the intention, the law will presume that, had the killing taken place, the homicide would have been murder. But this is as far as the mere legal presumption as to malice or intent will go, on trials for assault with intent to murder. That an effect not produced, and which if produced would have constituted a different offense from that actually committed, was intended, is surely for determination by the jury as a matter of fact. The law, without the aid of the jury, can presume the malicious motive, or the intention so far as realized in the act, but not an intention beyond what was so realized." In *Adams* v. *State*, 125 *Ga.* 11 (53 S. E. 804),

headnote 2 (*b*) is as follows: "Upon a prosecution for assault with intent to murder, proof that the accused shot at and wounded another without legal excuse will raise a presumption of law that the shooting was maliciously done; but a specific intent to kill is never to be presumed where death does not ensue, and must be shown by circumstances authorizing the jury to infer, as matter of fact, that the accused had that intent." In the body of the decision Justice Evans said: "But where death does not result from the use of a deadly weapon, there may be malice in giving the wound, but utter absence of an intention to kill. . . While, therefore, a presumption of malice will arise from the use of a deadly weapon, a specific intent to kill will not be presumed where death does not ensue, and the existence of such intent is a question of fact to be passed on by the jury."

It was perhaps because of the decisions in such cases as *Kendrick v. State,* 113 *Ga.* 759 (39 S. E. 286), *Tyre* v. *State,* 112 *Ga.* 224 (37 S. E. 374), and *Lanier* v. *State,* 106 *Ga.* 368 (32 S. E. 335), that the learned trial judge in this case did not submit to the jury the question as to assault and battery. In the *Kendrick* case, supra, the headnote is as follows: "When on the trial of an indictment for assault with intent to murder, alleged to have been committed by shooting with a pistol, the evidence for the State, if credible, unequivocally demanded a general verdict of guilty, and this evidence was met only by a statement of the accused which, if true, established an alibi, a verdict finding the accused guilty of the statutory offense of unlawfully shooting at another was unwarranted; there being, under such circumstances, no evidence whatever upon which to base the same." Following the above headnote and on the same page the report shows the following conduct of the defendant: "The evidence showed that he went, at night, to a house where his wife, who was living separate from him, was staying, broke a door and a window, threw brickbats and fired pistol-shots into the house, and, after exchanging shots with Zena Dixon and perhaps being wounded, and as she was returning into the house from the yard or steps, he arose, said *he was going to kill her* [italics ours], and fired more shots toward her." In the *Tyre* case, supra, the first headnote is as follows: "The law relating to the statutory offense of 'shooting at another' was not involved in a trial for assault with intent to murder,

wherein it appeared that the accused, with threats to kill, wantonly, maliciously, and with the intention of executing these threats, shot directly at the prosecutor with a pistol, which, thus used, was a weapon likely to produce death." Note the words "with threats to kill." The report of the case shows that "Davis then said, 'Please don't kill me, Mr. Tyre,' whereupon Tyre, accosting Davis, said, *'I am going to kill you'* [italics ours], and with that fired his pistol at Davis, who ran towards the house. Tyre kept shooting until he fired three times at Davis." In the *Lanier* case, supra, the uncontradicted evidence, as shown by the record, is as follows: "The person alleged to have been assaulted was the wife of the accused. The accused seems to have become angered on account of her talking with another man at or near a church in the county where the crime is alleged to have been committed. He made an assault upon her with a razor, cutting her three times; one of the wounds inflicted was in the neck, and came very near resulting in her death, lacking, according to the physicians who examined the wound, only the thickness of paper in severing an artery which, if cut, would necessarily have resulted in death. The wounds were large and deep, extending several inches. There was further testimony that the defendant had been drinking some that day, but was not drunk at the time of the assault. Just prior to the assault the accused threatened the life of his wife by stating that he intended *'to cut her damned head off'*" (italics ours).

In each of the above cases it will be seen that while the defendant used repeatedly the weapon he had in hand, yet the jury were not left to draw inferences from the testimony alone as to the intent to kill, but in each case there was in proof a specific declaration of the defendant's intention to kill the person assaulted. Such is not the fact in the instant case. While the record shows an unprovoked assault, it shows only one lick was struck, and the character of that wound can not be definitely determined from the evidence. The defendant was not so seriously injured as to prevent him from walking a considerable distance soon after the occurrence. The prosecutor had just been told by one of the three men that he "would give him until night to get away," and the defendant then said that he "would not give him that long," and then struck the blow and dropped the mattock

and left. Under the facts in this case, would it not be just as reasonable for the jury to conclude that for some undisclosed reason the defendant desired to frighten the prosecutor away from his home, and that the lick was used as a "persuasive argument" that he had best not wait until that night to leave. The prosecutor seemed to think that they wished him to leave, for, after testifying that Mr. Posey said, "I will not give him until night," he adds: "and hit me over the head and didn't give me another minute." It seems to us that one of the conclusions the jury would be authorized to reach from the evidence was that the defendant did not intend to kill the prosecutor; and, this being true, they should have been given the opportunity to find him guilty of assault and battery. In *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863), it was said: " 'Malice,' where no killing takes place, does not necessarily include an intention to kill; it may coexist with an intention to hurt or injure and not go beyond. To intend even a slight personal injury and inflict it without excuse will involve malice." In *Hunter* v. *State,* 10 *Ga. App.* 831 (74 S. E. 553), the first headnote is as follows: "The specific intent to kill is an essential ingredient of the offense of assault with intent to murder. The existence or non-existence of this intent is a matter of fact to be determined by the jury, from the evidence, and is not the subject of any legal presumption arising merely from a part of the evidence. The law will charge an evil-doer with all the natural consequences of his unlawful act which the act produces, but it does not impute to him by mere presumption an intention to add a consequence to his unlawful act which was not in fact produced."

In *Fallon* v. *State,* 5 *Ga. App.* 659, Judge Powell said: "If death results from a defendant's intentionally shooting at the deceased with an ordinary pistol in a manner ordinarily likely to kill, the defendant's intention to kill is not issuable. The law presumes that he intended to kill, and not to inflict some lesser injury. But if death does not ensue, the law does not presume that the defendant intended to kill, though he shot with a weapon likely to produce death and in a manner ordinarily likely to produce that result; for in cases of assault with intent to murder, the burden of proving that the defendant was possessed of a specific intention to kill is always upon the State, unaided by any presumption of

law.   The pronouncements of these propositions by this court and by the Supreme Court have been so uniform and unequivocal as to place them beyond question.   See *Burris* v. *State*, 2 *Ga. App.* 418 (58 S. E. 545); *Duncan* v. *State*, 1 *Ga. App.* 118 (58 S. E. 248; *Napper* v. *State*, 123 *Ga.* 571 (51 S. E. 592); *Gallery* v. *State* [supra]; *Patterson* v. *State* [supra].  Since, therefore, it is issuable and a question for the jury, in every case where death does not ensue, whether the defendant's intention in shooting was to kill or to inflict a lesser injury, the evidence can not be said to demand a verdict of guilty of assault with intent to murder, even where no justification or mitigation appears, unless, in addition to the fact of the shooting, there be shown such other facts and circumstances as to establish beyond question and the possibility of legitimate dispute that the defendant did in fact intend to kill.   In some cases the Supreme Court has held the evidence of the defendant's intention to kill to be so strong as to admit of no other legitimate inference, and in these cases a verdict of the statutory offense of shooting at another has been held to be without the bounds of the evidence, and therefore an illegal finding.   This was so in the cases of *Kendrick* and *Tyre,* supra, in each of which cases the defendant's lethal intent was made manifest by a statement accompanying the shooting that he did propose to kill the person he was about to shoot.   If it were not for this distinction, the cases just mentioned and other similar cases would be utterly irreconcilable with the indisputable proposition that the question whether the defendant intended to kill or not is always for the jury.   It is our opinion that the facts shown in the present case indicate the intention to kill very strongly, but not so strongly that we are able to say as a matter of law that the finding that this specific intention did exist was absolutely demanded of the jury; therefore we can not reverse the judgment on the ground that the verdict is contrary to the evidence in that it finds the defendant guilty of an offense indicated by no phase of the testimony."   In conclusion we appropriate the words of Judge Roan, as found in the case of *Lewis* v. *State,* 14 *Ga. App.* 503 (81 S. E. 378):  "To constitute the offense of assault with intent to murder, there must be a specific intent to kill.   This intent is not necessarily or conclusively shown by the use of a weapon likely to produce death.   The jury should have been given the discretion, under

proper instruction from the court, to convict·of a lesser offense in-
cluded in the higher felony charged, if they believed that the
evidence failed to show a specific intent to kill. The failure so
to instruct the jury was error. See *Powell* v. *State, 7 Ga. App.*
744 (67 S. E. 1048); *Ripley* v. *Slate, 7 Ga. App.* 679 (67 S. E.
834); *Fallon* v. *State, 5 Ga. App.* 659 (63 S. E. 806), and cases
therein cited."

.Owing to the fact that the case must be tried over a discussion
·of the other alleged errors would be useless.

　　*Judgment reversed. Broyles, P. J., and Harwell, J., concur.*