19636. SEAY *v.* THE STATE.

DECIDED MAY 15, 1929.

*Shelby Myrick,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general, Julian Hartridge,* contra.

LUKE, J. The indictment charges James A. Seay with committing assault with intent to murder by shooting at Thomas Hamilton with a pistol. The jury found Seay guilty of the offense charged and fixed his sentence at two years, with a recommendation that he be punished as for a misdemeanor. Besides the usual general grounds, there are four special grounds, the first three complaining of the court's failure to give certain instructions to the jury, and the fourth of a charge given.

On the night of May 30, 1928, the colored brethren of St. Paul's A. & M. E. Church were giving an entertainment in the nature of a "moot trial" at the Masonic Hall on Gwinnett Street in the City of Savannah. The Rev. James Seay and Thomas Hamilton were both members of said church. They had duties to perform on that occasion, Seay as ticket-taker, and Hamilton as judge of the moot court. When the "judge" started to enter the door, Seay, who claims he had orders to let no one without a ticket enter, demanded that Hamilton produce his ticket. The "judge" swears that he thought this a joke, and he shoved Seay aside and went in the door. Hamilton testifies that Seay challenged him to "go down stairs and fight it out," but that he declined the invitation; that after the performance was over, and while witness was in the ante-room changing his costume, the defendant entered, shook a stick at him, and threatened to kill him if he, the defendant, did not get satisfaction for what Hamilton "said at the door;" that one Hampton (Haslam?) attempted to push Seay out of the door; that Seay had a pistol, and that witness got as close to him as he was to the solicitor; that when the defendant had been almost

shoved out of the door, he shot witness full in the face with a pistol; that witness had no pistol then, and did not own one; that witness was "laid up" six or eight weeks; that witness never cursed Seay, and that the only curse words uttered were used by the latter; that Seay was a member of the church, but not its pastor. Hamilton's age was forty-two, and Seay's sixty-four. A physician testified that the bullet hit Hamilton in the chin and took away two pieces of the bone.

Iverson Haslam testified for the State that Seay entered the ante-room where Hamilton was undressing, accused the latter of cursing him vilely, and demanded that he "take it back;" that witness said, "If he called you that he will take it back;" that Hamilton did not open his mouth; that the defendant struck Hamilton with a stick and drew his pistol, and that while witness was pushing Seay out of the door Seay shot Hamilton; and that witness did not see Hamilton with a pistol at any time that night. Oscar Woodruff, sworn for the State, testified that Seay entered the ante-room with a stick in his left hand and his right hand in his coat-pocket, and cursed Hamilton and told him that he would have to take back what he said or he would kill him; that witness grabbed Seay around the waist and tried to throw him out of the door; that Hamilton tried to get through the door, and Seay shot him with the pistol; that witness was manager of the show, and had instructed Seay not to allow any one to enter without a ticket except the performers; that Seay should have known the performers, as he had been working with them; and that he did not see Hamilton with any sort of weapon. Willie Richardson, sworn for the defendant, testified that he heard the defendant say, "Don't come on me Hamp;" that another man had hold of the defendant; that a man was walking in front of the defendant with a drawn pistol, saying, "I will fix him;" that witness did not know the man with the pistol; that, so far as he saw, Seay did not have a pistol; and that at this juncture witness departed. William Cone, sworn for the defendant, testified that he saw Seay enter the ante-room, and heard him say, "Hamilton, don't come on me;" that he then saw Hamilton coming towards Seay with a pistol in his hand; that some one grabbed Seay around the waist, and Hamilton said, "I will fix him;" that the pistol was pointed towards witness, and that just as he turned to leave, he heard a pistol fire; that he did

not know who shot; that witness did not know whether Seay had a pistol or not, but that he did not see him with one; that all he saw in Seay's hand were some papers. Several witnesses testified to Seay's character for peaceableness.

The defendant stated that he had been instructed to let no one in the show without a ticket, and that he told Hamilton this; that Hamilton said, "I am boss of the play, and I will go in anyway," and got mad and shoved defendant aside and entered in spite of defendant's resistance; that Hamilton then said, "I will settle this thing with you after the play is over;" that the defendant thought no more about the matter until he went to the ante-room to make his report about the tickets; that when he entered the room Hamilton looked mad and started towards him; that Haslam grabbed him, and Hamilton said, "We got him, and I am going to fix you for what you did to me at the door;" that, while Haslam held the defendant, Hamilton pulled his pistol and pointed it at him (defendant); that Hamilton was younger and stronger than the defendant, and he was afraid of Hamilton; that he knew that Hamilton was going to try to shoot him or try to kill him, and that he pulled his pistol and shot in self-defense; that the reason he (defendant) had a pistol was that he knew he would have to go home late at night, and there had been a lot of people held up in that section.

Special ground 4 of the motion for a new trial alleges that the court erred in charging the jury as follows: "If you believe, on the other hand, that an hour and a half after the trouble at the door, defendant went to the dressing-room with a pistol in his right coat-pocket and his hand on it, and he shot an unarmed man at that time and at that place and did not shoot in self-defense, then it would be your duty to convict him." This charge was error for the reason that the jury should have been given the discretion, under proper instructions from the court, to convict of a lesser offense included in the higher felony charged, if they believed that the evidence failed to show a specific intent to kill. See in this connection, *Posey* v. *State*, 22 *Ga. App.* 97-103 (95 S. E. 325), and cit.; *Lewis* v. *State*, 14 *Ga. App.* 503 (81 S. E. 378).

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*