Biggs vs. The State.

JEDD W. BIGGS, plaintiff in error, vs. THE STATE OF GEOR-
GIA, defendant in error.

[1.] If the husband makes a violent assault upon one who attempts the seduc-
tion of his wife, and her character for virtue is impeached, it is competent for
the husband, when on trial for the assault, to give evidence in support of the
general character of his wife for chastity.

[2.] If to kill another with a gun, pistol, or other like instrument, would, under

the circumstances, be justifiable homicide, under the penal code, the failure to kill will not subject the party to the offence of shooting at another, under the Act of 1856.

[3.] If a man takes the life of another who attempts the seduction of his wife, under circumstances of gross and direct aggravation, it is for the jury to find whether the case stands upon the same footing of reason and justice, as other instances of justifiable homicide enumerated in the penal code.

[4.] When the injured husband meets one, the next morning, who has attempted, over-night, the violation of his marriage bed, and fires upon him, it is right and proper to give in evidence the previous occurrence, as a justification or excuse for the act.

Indictment, in Richmond Superior Court. Tried before Judge HOLT, at October Term, 1859.

The plaintiff in error was indicted in the Court below, for an assault with intent to murder. There was also a count for shooting at another, not in his own defence, contrary to the statute in such cases made and provided.

The cause was submitted, under the testimony and charge of the Court, to the jury, who found the defendant guilty under the second count in the indictment, with a recommendation to the mercy of the Court. Whereupon, defendant's counsel moved for a new trial upon the following grounds:

1st. Because the verdict is contrary to the preponderance of the evidence.

2d. Because the verdict is contrary to law.

3d. Because the Court decided that Mrs. Biggs was an incompetent witness.

4th. Because the Court ruled out the evidence of George A. Oates, as to the general character of Mrs. Biggs for virtue and chastity.

5th. Because the Court charged the jury, that if a man kill another, that other being at the time in the act of adultery with the slayer's wife, the killing would be voluntary manslaughter and not justifiable homicide.

6th. Because the Court held, that shooting at the adulterer under such circumstances, would be a violation of the Act of 1856 on that subject; but that unless an act of criminal

connection be shown in this case, these remarks had no application to the case, and are principles not necessary to be considered by the jury.

7th. Because the Court charged the jury, that under no circumstances of aggravation, however gross and direct, would a man be justifiable in taking the life of another, who attempts the seduction of his wife.

8th. Because the Court charged the jury, that if a man shoot at another, under such circumstances, and fail to kill, he is guilty of assault with intent to murder, if there be malice; or, shooting at another, under the Act of 1856, if there be no malice.

9th. Because the Court charged the jury, that although the shooting at another, might, if it resulted in death, be justifiable homicide, yet if death did not ensue, it would be a crime under the Act of 1856, unless it were done in self-defence.

10th. Because the Court charged the jury, that the only defence to the crime of shooting at another, is, that it was done in the prisoner's own defence.

11th. Because the Court charged the jury, that whatever may have occurred on the night previous to the difficulty at the breakfast table, it could not amount to a justification or excuse for the act of shooting on the morning after that difficulty; and that if the prisoner commenced the assault at the breakfast table by laying violent hands upon Parish, and by first shooting at him, even the plea of self-defence is taken away from him.

12th. Because the verdict was against law, and strongly and decidly against the weight of evidence.

All of which said charges, rulings and decisions, in said motion set forth, the Court did make.

In the progress of the trial, and in the argument of the case before the jury, the defendant's counsel relied for his defence, not only on the twelfth, thirteenth and fourteenth sections of the fourth division of the penal code, in relation to

self-defence, but also, and mainly upon the sixteenth section of the fourth division of the penal code, insisting that this case presented one of those instances which stand upon the same footing of reason and justice, as those enumerated in the previous sections of the same division; and if death had resulted from the shooting, it would have been justifiable homicide, and that as death did not ensue, the shooting was not a crime, but was justifiable.

At the said Term, to-wit, on the 26th day of November, 1859, the Court overruled said motion for a new trial, upon all the grounds therein set forth; to which said decision, the said defendant by his counsel excepted, and now assigns the same as error.

And now, within thirty days from the close of said Term of the Court, at which said decision was rendered, tenders this his bill of exceptions, and prays that the same be certified according to the satute in such cases made and provided.

MILLERS & JACKSON, for plaintiff in error.

ATTORNEY GENERAL, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

[1.] Ought the testimony of George A. Oates, as to the general character of Mrs. Biggs for virtue and chastity, to have been rejected?

Her reputation in this respect had been implicated both by the conduct and evidence of Eleazer M. Parish. And if she was the woman he took her to be, the conduct of her husband would have been less justifiable in resorting to the means he did, to rescue and protect her from insult and importunity. We hold, therefore, that the proof should have been received.

[2.] The 9th charge given by the presiding Judge to the jury, was in these words: "That although the shooting at

another, might, if it resulted in death, be justifiable homicide, yet if death did not ensue, it would be a crime, under the Act of 1856, unless it were done in self-defence."

Such we concede is the letter of the 3d section of the Act of 1856.    It provides, that from and after its passage, that " any person who shall be guilty of the offence of shooting at another, or at any slave or free person of color, except in his own defence, with a gun, pistol, or other instrument of the like kind, shall, on conviction, be punished by a fine not exceeding one thousand dollars, and imprisoned not less than twelve months, or confinement in the penitentiary at the discretion of the Court."    *Pamphlet Acts* 1855–56, *p.* 265.

By the penal code, it is justifiable homicide to kill another, not only in self-defence, but in the defence of one's habitation, property or family, against one who manifestly intends to commit a felony on either.    Can it be believed that the Legislature intended, that if a husband or father shoots at one who is attempting to commit a rape on his wife or daughter, and fails to kill him, he is liable to be convicted under this Act, and imprisoned in the penitentiary?    Never, we apprehend.    The effects of such a construction would be too monstrous.    We must deviate then from the letter of the law, seeing that if literally interpreted, it leads to such absurd consequences, upon the same principle that it was decided, after long debate, that the Bolognian law, which enacted that whoever drew blood in the streets should be punished with the utmost severity, did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit.

If it be justifiable homicide to shoot down a burglar who forcibly invades your house, with intent to commit a felony, as it undoubtedly is, and yet if you fail to kill him, you subject yourself to the penalty of the Act of 1856, the title of the statute should be amended.    It should be "An Act to encourage good shooting."    And yet it would seem to be

passed for the purpose of preventing shooting altogether, except in cases of self-defence.

[3.] His Honor, the presiding Judge, charged the jury, "that under no circumstances of aggravation, however gross and direct, would a man be justifiable in taking the life of another, who attempts the seduction of his wife."

This instruction brings up broadly the meaning of the 16th section of the 4th division of the penal code. After treating of the various grades of homicide, murder, manslaughter—voluntary and involuntary and justifiable—it is provided that " all other instances which stand upon the same footing of reason and justice, as those enumerated, shall be justifiable homicide."

What is the meaning of this section? It signifies something. And it is the duty of the Courts to give it effect. It has been suggested, that to bring cases within this provision, they must be accompanied with force. But has the Legislature so limited it? Is it not more reasonable to suppose, that it was their purpose to clothe the juries in criminal cases, in which they are made the judges of the law as well as the facts, with large discretionary powers over this class of offences; and leave it with them to find whether the particular instance stands on the same footing of reason and justice as the cases of justifiable homicide specified in the code? Has an American jury ever convicted a husband or father of murder or manslaughter, for killing the seducer of his wife or daughter? And with this exceedingly broad and comprehensive enactment standing on our statute book, is it just to juries to brand them with perjury for rendering such verdicts in this State? Is it not their right to determine whether, in reason or justice, it is not as justifiable in the sight of Heaven and earth, to slay the murderer of the peace and respectability of a family, as one who forcibly attacks habitation and property? What is the annihilation of houses or chattels by fire and faggot, compared with the destruction of female innocence; robbing woman of that priceless jewel,

which leaves her a blasted ruin, with the mournful motto inscribed upon its frontals, " thy glory is departed?"   Our sacked habitations may be rebuilt, but who shall repair this moral desolation?    How many has it sent suddenly, with unbearable sorrow, to their graves ?

In what has society a deeper concern than in the protection of female purity, and the marriage relation?   The wife cannot surrender herself to another.   It is treason against the conjugal rights.   Dirty dollars will not compensate for a breach of the nuptial vow.   And if the wife is too weak to save herself, is it not the privilege of the jury to say whether the strong arm of the husband may not interpose, to shield and defend her from pollution?

[4.] Finally, the Court charged the jury, " that whatever may have occured on the night previous to the difficulty at the breakfast table, it could not amount to a justification or excuse for the act of shooting, the morning after the difficulty."

And this instruction was based, no doubt, upon the idea, that sufficient time had elapsed for passion to subside, and for reason to resume her sway.

In many cases this doctrine is true, but we cannot think it a sound proposition, under the facts and circumstances which surrounded these parties.   The husband had heard and seen the personal indignity offered his wife the night before.   He permitted Parish to escape, with threats of punishment should he remain in the city.   The very next morning, at the breakfast table, he unblushingly resumes his seat in the immediate neighborhood of his intended victim.   Was it human to keep cool in such a situation ?   To see the man who had attempted to desecrate the family altar, the night before, seat himself within two chairs of his wife!   And was it not right and proper, in order to account for his violence, to give in proof to the jury, the occurrences of the preceding evening?   To shut out the scene which transpired in the bed-chamber, is to deprive the jury of the power of appreci-

ating the transport of passion kindled in the bosom of Biggs by the presence of Parish.

With our view of the law, we feel constrained to award a new trial in this case.

Judgment reversed.