## KUGLAR vs. GARNER.

1. The issue, whether certain notes in suit were obtained from the maker voluntarily as a settlement, or whether he was coerced and influenced thereto by the threats and fraudulent acts of the parties obtaining them, and who were practicing upon his fears and duping and deceiving him, so that he might be induced to submit to their unlawful and deceitful practices, greatly to his own injury, and whether the party taking the notes had notice of these facts, were fairly and fully submitted to the jury, and their verdict was in accordance with the weight of the evidence.

2. It is admissible to prove the notoriety in the neighborhood where the parties reside, of a fact already proved to exist, to lay the foundation for an inference that the plaintiff was cognizant of that fact.

April 2, 1885.

Fraud. Verdict. New Trial. Evidence. Before Judge HAMMOND. Clayton Superior Court. September Term, 1884.

Reported in the decision.

J. T. SPENCE; JACKSON & KING, for plaintiff in error.

JOHN I. HALL; C. W. HODNETT, for defendant.

HALL, Justice.

The notes on which this suit is brought were made payable to Jesse L. Blalock, or bearer, and purport on their face to have been given in consideration of the purchase from Blalock of a tract of land on which the defendant, who was the maker, then resided. The plaintiff set forth that he became the purchaser of the notes before they fell due, in the fair and usual course of trade, and for a valuable consideration. The defence set up was that the notes were procured by fraud, and that the plaintiff had notice of the facts constituting the fraud before he became the holder of the same. The jury, under the evidence and

charge of the court, found for the defendant; and the plaintiff moved a new trial, upon various grounds, which was refused, and the judgment overruling this motion was excepted to, and is assigned as error here.

The defendant was the owner of the land in question, and had resided on it for some years, when he availed himself of the benefit of the bankrupt act, and in that proceeding this land was exempted. After his discharge in bankruptcy, an execution, which had been proved in that court as a debt against his estate, was levied on the exempted land, and under this levy it was advertised for sale. This execution was controlled by Spence, who was acting in concert with Blalock, and who was nearly related to him. The defendant, who appears to have been an illit. erate, credulous person, had determined to prevent the sale by interposing his discharge in bankruptcy, and visited the county town with a view of engaging the services of an attorney to protect his rights in the matter, when Spence met and assured him that the sale would not take place. Acting under this assurance, he abandoned the purpose of engaging the services of counsel and returned to his home. The land was sold, however, at the appointed time, and brought $65.00 less than one-tenth of its proved value. The defendant was not apprised of the sale for several days after it was made, and when he went to look after the matter, he was informed that Blalock was the purchaser; he offered to return to him what he had bid for the land, but this offer was declined, unless he would also pay the demands controlled by Blalock and Spence, or one of them, amounting to some five hundred dollars, and which they falsely alleged were incumbrances upon the land. Coupled with the demand, Blalock threatened to turn defendant out of possession immediately, unless he complied with the terms imposed. Being much alarmed at this threat, in consequence of the extreme sickness of his wife, and the exposure to which it would subject her, he was coerced into a compliance, and gave these notes in pursuance and

performance of this contract. It seems that the notes, when executed, went into Spence's hands, who negotiated them to the plaintiff, with whom he was on intimate terms and had close business relations. There were numerous facts in evidence, tending directly and strongly to charge the plaintiff with notice of the circumstances attending this fraudulent transaction, a bare outline of the facts of which we have given; indeed, the treatment of the defendant in the affair was a matter of public notoriety, and was freely discussed in the neighborhood where the parties lived, before the transfer of the notes. The facts in proof were sufficient to warrant the conclusion that the defendant was the victim of a conspiracy entered into between Blalock, Spence and the plaintiff to consummate this wrong and fraud, and to extort from him money, for the payment of which he was not legally liable. It is difficult to believe that a sharp note-shaver and shrewd trader, such as the plaintiff was shown to be, would pay, without indorsement or other security, nearly the full value for the notes of a bankrupt, especially when apprised of the facility with which liberal homesteads and exemptions were obtained under the laws, albeit there had been a stipulation to waive them.

The points mainly relied upon here to obviate this defence are: 1st. That the defendant, with a full knowlledge of the facts and of his rights under the law, confirmed the sale of the land by purchasing the same; and 2d, that there wase rror in admitting in evidence the notoriety of the defendant's treatment and the discussion of the same in the neighborhood where he and the plaintiff both resided, prior to the alleged purchase of the notes by the latter.

1. As to the character of the transaction in its origin, that is so clearly defined and well established by the proof that no effort was made before this court to justify, or even to paliate it, if the jury believed the account testified to by the defendant, corroborated as it was by many facts in evidence, they could readily conclude that the giving

of these notes was not his free and voluntary act, but that he was coerced and influenced thereto by the threats and acts of those who were practicing upon his fears and duping and deceiving him, so that he might be induced to submit to their unlawful and deceitful practices, greatly to his own injury.    Code, §§2752, 2637 and citations.    This issue and the others were fairly and fully submitted, under clear, explicit and proper instructions, to the jury.    The charge omitted nothing that it should have contained, and contained nothing that should have been omitted.

2. In numerous cases it has been held that " it is no departure from the rules of evidence to prove the notoriety in the neighborhood of a fact already proved to exist, to lay the foundation for an inference that the plaintiff was cognizant of that fact."    5 Porter's R., 382.    "To prove cognizance of a particular fact," says Dr. Wharton in his Treatise on the Law of Evidence, §252, " it has been held admissible," under similar circumstances, " to show that such fact was at the time generally known and talked about in the neighborhood where the party in question resided, or was a matter of common reputation in the business community to which both parties belonged."  See cases cited in note (1) there.    Such evidence is received only as one among other cumulative modes of proving the condition of a particular person's mind as to a certain issue, but is inadmissible to prove any " objective fact."    *Ib.*, §253. All the issues made in this case have been found, as it seems to us, in accordance with the decided weight of the evidence and in accordance with the principles of equity and justice.  Such a verdict should not be disturbed, except for weightier reasons  than any we  have  been able to discover in this record.

Judgment affirmed.