## GOSSETT *v.* THE STATE.

1. A father may protect his minor female child from seduction or debauchery, and if necessary for that purpose, where the criminal act is in progress or about to take place, may slay the wrong-doer. But to delberately kill in revenge for a past injury, however heinous, after reason has had time to resume its sway, is not justifiable.
2. Under the facts of this case there was no error in failing or refusing to charge section 74 of the Penal Code.
3. The charge given by the court did not clearly and distinctly place before the jury the issues involved, as to whether the homicide was murder, voluntary manslaughter, or justifiable.
4. On the trial of an indictment for murder, the defendant having admitted the homicide but having sought to justify it on the ground that the deceased was seeking and actually proceeding to ruin his minor daughter, and that he was outraged in his feelings and acted for the purpose of protecting his child and preventing the wrong, it was admissible in rebuttal for the State to introduce evidence of notorious character for lewdness on the part of the defendant's daughter in the community where the defendant and the deceased resided and worked.
5. It was not permissible for the State to show that the defendant's daughter had been seen by a witness between nine and ten o'clock at night, sitting on a fence talking to a man, no connection between such fact and the homicide appearing, and no knowledge thereof on the part of the defendant being shown.

Argued May 16, — Decided June 17, 1905.

Conviction of manslaughter. Before Judge Henry. Walker superior court. March 29, 1905.

John Gossett was indicted for the murder of John Doner. He was found guilty of voluntary manslaughter, moved for a new trial, and, upon its refusal, excepted. The evidence for the State showed, in brief, the following facts: The defendant killed the deceased by stabbing, at a place where the deceased lived in

Walker county. The defendant and the deceased lived a few hundred yards apart. None of the witnesses saw the actual homicide, but some of them heard what appeared to be a fight in progress, and on going to the scene found the deceased in a dying condition and the defendant standing over him. One of the witnesses testified as follows: " Mr. Gossett stated to me that he killed Doner, and that he would do it again under the same circumstances; he just stated that he would do it again if it was to do over. He said it was about his daughter; he said his daughter was there in Doner's room, in Doner's bed; he said that Mr. Doner had been in the habit of coming up there to his house (Gossett's house) for six or eight months, and that he was there on the evening of the killing, prior to the killing. I think that Gossett said that he was waked up by his wife and told that his daughter was gone. Gossett also stated that he went to the door of Doner and knocked, and that Doner got up, and that he turned the knob and found the door unfastened, and that he walked into the room. He said that he found his daughter in there. He said he asked Doner where his daughter Callie was, and Doner said he didn't know. Callie was Gossett's daughter. He didn't say that it was in the dark. He didn't tell me that Doner said she wasn't there; he said he didn't know where she was at, and this was in answer to Gossett's question as to Callie's whereabouts. . . When I got down there they decided that they would want Callie at the coroner's inquest, and I went up to the house where they lived and went in, and Mrs. Gossett said that she had not seen Callie. I found her at a house where colored people lived. She was in bed with two negro children." Both the plaintiff and the defendant were connected with the United States Army post in Walker county, the defendant being employed with the pack-train. The defendant introduced no evidence, but relied on his statement, which was similar to that detailed by the witness, only fuller. Among other things he stated as follows: The deceased and he had worked together for two years, and were intimate friends — almost like brothers; and the deceased was a constant visitor in his family. On the night of the homicide he was at the defendant's house, and when the latter became tired he excused himself, leaving the deceased and several members of the family together. In the night his wife waked him

and told him that their daughter was gone, and that she thought Doner had run away with the girl. He went to Doner's house and called for Doner's roommate to see if she was there and to make inquiries after her. After knocking and calling twice and receiving no answer, he turned the door knob and the door came partly open. Doner came to the door, and, on inquiry, denied knowledge of the girl's whereabouts. Defendant went in and found his daughter in Doner's bed. He smelled whisky strongly on her breath, and "that caused me to think that he had brought her there to ruin her and the rest of us for the rest of my days. And I tell you what's a fact, when such feelings as that come over you, it sure hurts you, and to ruin a child of mine it sure hurts." He turned on Doner, a scuffle ensued, and Doner was killed.

In rebuttal the State introduced the evidence of several witnesses to show that they knew the general character as to virtue or lewdness of Callie, the defendant's daughter, in that neighborhood; that the general talk around there was that she was not considered a virtuous woman, and that her character for lewdness was bad; that the general talk among those who worked around that place was that she was of bad character and had been for a year previous; that Gossett worked with the pack-train which was right in the neighborhood of where this gossip was going on, and both he and Doner lived there; and that this was talked among the soldiers and employees of the United States Government. One of the witnesses testified, that the girl appeared to be about seventeen or eighteen years old; that she "was a medium-sized woman;" that she wore short dresses when the witness first knew her, but had put on long dresses reaching about to her shoe tops. Evidence was also admitted to show that she had been seen on several occasions at night away from home, once on the road with a negro girl, once sitting on the "corral" fence talking with a man between nine and ten o'clock at night, and at another time coming out of the pack-train quarters about eight o'clock at night; and that she had been seen in the pack-train quarters, running and playing with the men in their sleeping quarters, and in the kitchen; also that she had been seen at the railway station at eight or nine o'clock at night. The defendant made a further statement, in

which he said that his daughter was only fifteen years old, and that if she had done anything wrong or had a bad reputation, he had no knowledge of it. The motion for new trial was based on the grounds, that the verdict was contrary to law and the evidence, and that the court erred in various charges and omissions to charge, and in the admission of evidence to show the general character of Callie Gossett to be lewd, over objection on the ground that it was not in rebuttal, that it was immaterial and irrelevant, and that there was no evidence that the defendant knew, at the time of the homicide, of such lewd character. Another ground of the motion was based on the evidence of a witness who testified that he saw her in the "corral" between nine and ten o'clock at night, talking to a man, over objection on the ground that the State was singling out a specific act of Callie Gossett to show bad character, and that this was improper; also that there was no evidence that defendant had notice of the fact.

*Payne & Payne, R. M. W. Glenn, W. A. Schoolfield,* and *F. W. Copeland,* for plaintiff in error.

*W. H. Ennis, solicitor-general,* and *Bale & Shaw,* contra.

LUMPKIN, J. (After stating the foregoing facts.) 1. It was said, in the case of *Wilkerson* v. *State,* 91 *Ga.* 737: "This court will go as far as the rules of established law will permit in protecting the virtue and chastity of the wives and daughters of this State from the criminal wiles of the adulterer and seducer, and will uphold husbands and fathers in all they may lawfully do to maintain and protect the sanctity of their homes and firesides." And again, "The law permits and will justify the homicide of another by the husband to prevent the seduction of the wife, or even to prevent the committing with her of a single act of adultery, if by his previous conduct he has not forfeited the right" (p. 734). But in such cases, whether relating to wife or daughter, the idea of prevention or defense against an impending or progressing wrong must be involved, in order to render the homicide justifiable. "To deliberately kill in revenge for a past injury, however heinous, after reason has had time to resume its sway, can not be justifiable." *Hill* v. *State,* 64 *Ga.* 453 (2). "A husband may attack for intimacy with his wife in his presence, raising a well-founded belief that the criminal act is just over or about to begin." *Drysdale* v. *State,* 83 *Ga.*

744; *Wilkerson* v. *State*, supra. But the law will not justify deliberate revenge. However grievous a past wrong may have been, the law does not intrust its punishment to individual vengeance. For cases where the defense was under section 75 of the Penal Code, on account of wife or daughter, see *Jackson* v. *State*, 91 *Ga.* 271; *Futch* v. *State*, 90 *Ga.* 472; *Channell* v. *State*, 109 *Ga.* 150, 153; *Cloud* v. *State*, 81 *Ga.* 444; *Mays* v. *State*, 88 *Ga.* 399, 402; *Baker* v. *State*, 111 *Ga.* 141–2; *Richardson* v. *State*, 70 *Ga.* 825; *Bone* v. *State*, 86 *Ga.* 108; *Perry* v. *State*, 102 *Ga.* 365; *Elliott* v. *State*, 46 *Ga.* 159. While the case of *Biggs* v. *State*, 29 *Ga.* 723, contains many strong and forcible expressions, it has not been considered by the court as conflicting with later rulings. *Wilkerson* v. *State*, 91 *Ga.* 733, supra.

2. Several of the grounds of the motion for a new trial complain that the court did not give in charge to the jury the whole of section 74 of the Penal Code, which reads as follows: " Parents and children may mutually protect each other, and justify the defense of the person or reputation of each other." It is urged that the court should have instructed the jury that, if the defendant killed Doner in defense of the person or reputation of his daughter, it was justifiable homicide. Prior to the codification of 1895, the section quoted did not form any part of the Penal Code, but was in the Civil Code. It was first codified in the original Code of 1863 as § 1747, in the chapter relating to parent and child. It was continued in the civil division of the successive codes until that of 1895, when it was transferred and became section 74 of the Penal Code. Sections 70, 71, 72, 73, and 75 of the Penal Code date back to the Penal Code of 1833, where they form sections 39 to 43 inclusive. Cobb's Digest, 784–5. With these five sections in the penal division of the code and what is now section 74 then incorporated in the civil division of the code, nearly all of the decisions above cited were made. In *Hill* v. *State*, supra, it was held that section 75 should be construed in connection with sections 70, 71, 72, and 73; that the expression, " all other instances which stand upon the same footing of reason and justice as those enumerated," had reference to those sections; and that the idea of defense against some impending and pressing wrong entered into all of them. In our judgment, the insertion of

section 74 into the Penal Code, and its adoption, were not intended to wholly change the law as previously adjudicated. The protection of the parent or child by the other, when necessary, would have fallen within section 75, under the former arrangement of sections. But it must be considered in the light of the other sections mentioned. The rules which justify, or under the ancient law excuse, a homicide in self-defense have long been held to extend to parent and child and husband and wife. *Armistead* v. *State,* 18 *Ga.* 704; 4 Bl. Com. 186 (Hammond's ed. 230). What effect is to be given to the expression, "or reputation of each other," it is not necessary now to decide. Certain it is that a man can not be justified in committing a homicide because some slander has been perpetrated upon him, or upon his child. If any case can exist where a man may lawfully slay to prevent a libel or slander upon him or upon his child from being published, it has not been suggested to us. But no question of preventing injury to reputation is involved in this case. There was no evidence to show that any violent personal injury was sought to be accomplished upon the daughter of the defendant, or that there was any threatened or impending libel or slander which would affect her reputation. It would not have been proper, under the evidence, to have instructed the jury, in effect, that the defendant had the right to kill the deceased to protect his daughter's person or reputation. The writer has found but one place in which § 1796 of the Code of 1882 (Penal Code, § 74) has been cited in a criminal case, and there only passingly. *Osgood* v. *State,* 63 *Ga.* 793.

3. Without discussing the various grounds of the motion separately, it may be said that the charge given by the court did not clearly and distinctly place before the jury the issues involved in the case. It was in question whether the killing of the deceased by the defendant was murder; or whether, under the circumstances disclosed by the evidence, the defendant was guilty of voluntary manslaughter; or whether, under section 75 of the Penal Code as construed in the *Hill* case and other decisions above cited, this was one of the "other instances which stand upon the same footing of reason and justice as those enumerated" in sections 70, 71, 72, and 73, so as to make the homicide justifiable.

4. " The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Penal Code, §993. In a murder case the State can not put in issue the character of the defendant for violence, or the character of the deceased for peaceableness, but may introduce evidence on that subject in rebuttal. *Pound* v. *State*, 43 *Ga.* 88. In some cases evidence as to character for chastity is relevant and admissible; as on the charge of keeping a lewd house (*McCain* v. *State*, 57 *Ga.* 390), or of being a street walker. *Braddy* v. *Milledgeville*, 74 *Ga.* 516. For other rulings on the subject, see also Blackman *v.* State, 36 Ala. 295; Foulkes *v.* Sellway, Esp. 234; Fall *v.* Overstreet, 3 Munf. 495; Commonwealth *v.* Gray, 129 Mass. 474. In the case at bar the character sought to be proved is not that of the defendant or the deceased, but of the daughter of the former, to protect whom from ruin he claimed to have slain the deceased. The homicide was not denied. The defense rested upon the contention that the defendant acted for the purpose of saving his daughter from being seduced or debauched. He contended that she was a very young girl, and sought, in his statement, to put the deceased in the attitude of being on the point or in the act of ruining her. Was this true? Or, if not entirely so under the actual facts, was the defendant guilty of murder or manslaughter, or was he justifiable? Where the defense is based on section 75 of the Penal Code, and it is claimed that the facts of the particular case make it one of the instances which stand upon the same footing of reason and justice as those enumerated in other sections of the code already referred to, it will be perceived that the alleged conduct of the deceased is to be somewhat analogized to an effort to slay the defendant, or by violence or surprise to commit a felony upon habitation, property, or person, or seeking to make a forcible invasion upon the property of another with intention to commit a serious injury, or in such manner that serious injury might accrue to person, property, or family; and the person who kills and relies on that section of the Penal Code for his defense occupies a position somewhat analogous to one claiming to have defended against the acts referred to in the other sections of the Penal Code mentioned as

therein provided. This is clearly stated in *Hill's* case, 64 *Ga.* 467, supra. Where the defense rests upon the section just referred to, the case involves a consideration of the conduct both of the deceased and of the defendant in connection with the transaction. In the case of *Biggs* v. *State*, 29 *Ga.* 723, 725, evidence in regard to the general character of Mrs. Biggs (the defendant's wife) for virtue and chastity was admitted. Lumpkin, J., in delivering the opinion, said: "Her reputation in this respect has been implicated both by the conduct and evidence of Eleazer M. Parish. And if she was the woman he took her to be, the conduct of her husband would have been less justifiable in resorting to the means he did, to rescue and protect her from insult and importunity. We hold, therefore, that the proof should have been received." 2 Bish. Cr. Proc. (4th ed.) § 95. The evidence in that case was offered by the defendant; but if the general character of the defendant's wife for virtue and chastity was implicated so as to authorize the defendant to introduce evidence to sustain it, why was it not so far brought into the present case by the defendant as to authorize the State to introduce rebutting evidence on the subject?

In a word, the case stands thus: The homicide is admitted. The defendant, however, asserts that he was justified in killing the deceased, because the latter was proceeding to ruin the defendant's little daughter, and she was found by defendant in his bed, her breath full of the odor of whisky. The State responds by seeking to prove that this is not true; that the deceased was not proceeding to ruin the defendant's daughter; that she was a young woman of lewd character; and that this was so notorious in the neighborhood where the defendant and the deceased both worked and resided, among those with whom they dealt, that the defendant must have previously known of the fact; and therefore that his statements in regard to his own conduct and that of the deceased, and also in regard to his own motives and the unexpected discovery which outraged his feelings as a father, were not in fact as he stated them to be. It is competent for the State to introduce evidence to rebut the defendant's statement. *Holsenbake* v. *State*, 45 *Ga.* 44 (3).

In the *Hill* case, 64 *Ga.*, supra, evidence of previous lewd conduct on the part of the defendant's wife, and to show that he

knew of it, was admitted and commented on as a material factor in the case ; and this is also a fact in other cases hereinbefore cited. It is true that no ruling was made upon the admissibility of the evidence, but it was discussed as a material part of those cases. It is also true that the defendant might claim the right to prevent cohabitation with his minor daughter, even though she had fallen, and to use force, if necessary, for that purpose, unless by his conduct he had forfeited that right. But whether or not, under a certain state of facts, the defendant would be justified in killing the deceased, this furnishes no reason why he should be permitted to assert what may be an entirely different state of facts, and yet exclude the State from disproving his statement. It would savor too much of trying a case by excluding light, rather than by admitting it. Of course we do not mean to express any opinion as to what was the character of the girl, or whether the father had any knowledge of it, if it was bad. What weight the jury would give to the evidence of her general bad character, and whether they would believe that in fact the defendant had knowledge of it or not, does not affect the admissibility of the evidence, in rebuttal. But with all legitimate evidence in, it remains to be decided whether the case is one of murder, voluntary manslaughter, or justifiable homicide. The Civil Code, § 5176, declares that "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." As to the question of knowledge on the part of the defendant, in *Kuglar* v. *Garner*, 74 *Ga.* 765, it was held that "It is admissible to prove the notoriety, in the neighborhood where the parties reside, of a fact already proved to exist, to lay the foundation for an inference that the plaintiff was cognizant of that fact." This was a civil case, and the rule of civil law, which charges a person who is put on inquiry with notice of whatever such inquiry reasonably prosecuted would develop, does not apply to criminal cases. Nevertheless it has been held that in certain criminal cases, where it is material to bring home to a party cognizance of a particular fact, common reputation where he resides or does business is admissible. Whart. Crim. Ev. (9th ed.) § 254.

At common law if a man caught another in the act of adultery

with his wife and killed the adulterer upon the spot, it was not justifiable or excusable homicide, but manslaughter.    Blackstone says :   " So if a man takes another in the act of adultery with his wife, and kills him directly upon the spot; though this was allowed by the laws of Solon, as likewise by the Roman Civil law (if the adulterer was found in the husband's own house), and also among the ancient Goths ; yet in England it is not absolutely ranked in the class of justifiable homicide, as in case of a forcible rape, but it is manslaughter.    It is, however, the lowest degree of it; and therefore in such a case the court directed the burning in the hand to be gently inflicted, because there could not be a greater provocation."    4 Bl. Com. 191, 192 (Hammond's ed., top page 237).    This seems to have been the common law, although East, in his Pleas of the Crown (p. 272), referring to the act of 24 Henry VIII, c. 5, uses the expression, " But though the statute only mentions certain cases, it must not be taken to imply an exclusion of any other instances of justifiable homicide which stand upon the same footing of reason and justice."    2 Bish. Crim. Law (8th ed.), § 708.    On this subject see People v. Cook, 39 Mich. 236, s. c. 6 Lawson's Crim. Defenses, Supp. 368.    In Texas a special statute was passed on the subject.    Price v. State, 18 Tex. App. 474, s. c. 5 Lawson's Crim. Defenses, 1095, 51 Am. R. 322, 328, and note; Varnell v. State, 26 Texas. App. 56 (involving a minor daughter); State v. Herrell, 97 Mo. 105, s. c. 10 Am. St. R. 289 (adultery with defendant's mother).    As to the construction which has been placed upon section 75 of the Penal Code, in cases involving a claim of debauchery or seduction of wife or minor daughter in this State, see cases above cited.    See also *Wair* v. *State*, 51 *Ga.* 310.    Under the construction which has been placed upon that section, allowing somewhat greater latitude for justification in cases of the kind referred to than did the common law, and in view of the right of the accused to make a statement to the jury, which is accorded in this State, there is the more reason why, when one relies upon that section for his defense, all the light legitimately derivable from the evidence should be obtained.    *Haynes* v. *State*, 17 *Ga.* 465, 484; Noles v. State, 26 Ala. 131, 62 Am Dec. 711. We are aware that evidence of character is not usually received, when offered for the purpose of throwing light on the probability

of the doing of a certain act by a person whose character is thus testified about. 1 Gr. Ev. (16th ed.) §14 (b), (a). But this is quite different from the question presented in the case at bar.

5. Where character is a part of the issue, as, by way of illustration, in an indictment for seduction, special acts have sometimes been admitted. For instance see 1 Gr. Ev. (16th ed.) § 14 (h); Com. v. Gray, 129 Mass. 474, supra; White v. Murtland, 71 Ill. 250; Caldwell v. State, 17 Conn. 467; Foulkes v. Sellway, Esp. 234, supra; Blackman v. State, 36 Ala. 295, supra; *Wood v. State,* 48 *Ga.* 192. But otherwise particular conduct as evidence of character is generally held inadmissible. Unchaste conduct of a wife or daughter, known to a husband or father prior to a homicide by him claimed to have been committed to prevent a seduction or criminal intimacy with her, may throw light on his motives and acts. On the trial of an indictment for rape, or assault with intent to rape, general character, but not particular acts to show want of chastity in the female alleged to have been raped, has been held admissible. *Black* v. *State,* 119 *Ga.* 476; *Camp* v. *State,* 3 *Ga.* 417; *Seale* v. *State,* 114 *Ga.* 518. We do not see how evidence that the defendant's daughter was seen talking to a man at night, not shown to have been known to the defendant, could have illustrated the issue. It should have been rejected.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*