## 21805. GIBSON *v.* THE STATE.

DECIDED NOVEMBER 10, 1931.

*W. A. Wood, Parker & Parker,* for plaintiff in error.

*A. B. Spence, solicitor-general, J. T. Powell,* contra.

LUKE, J. Under an indictment charging K. K. Gibson with the murder of William Warren, he was convicted of voluntary manslaughter. He excepts to the overruling of his motion for a new trial.

Henry McVey, a witness for the State, who arrived at the scene

of the homicide a few minutes after it happened, testified in part as follows: "Kenney Gibson made a statement to me about how come him to kill him. He was killed about thirty steps from Gibson's fence, down in the scrub like. He said he caught Warren and his wife down there. . . The defendant told me why he was in those bushes. He said somebody told him something about this darkey that had killed his brother, and said that he heard that he was going to get him, and he went in there that morning and thought may be he would run up on him. . . I was the first person to get there after the killing. I found him and his wife down there. I found his [deceased's] clothes undone, his shirt and trousers both. The front part of his trousers was open from here up (indicating), but they were up. He was shot through his belt. We could see his private parts after we examined him. He had a rubber on his private parts. I think they call them condrums. . . Mr. Gibson said he was down there expecting to find the darkey. He went down there to find him. . . He said Warren was on his wife." Carey Rowell, a witness for the State who arrived at the scene about ten minutes after the homicide, testified in part as follows: "Mr. Gibson talked to me after I got there. . . He said that he caught him on his wife. . . Mr. Gibson said before all of us . . that he caught Mr. Warren on his wife, . . that he was hunting the darkey who killed his brother. His (deceased's) clothing was partly down. His trousers were unbuttoned in front and partly down, and he had a rubber, or condrum, on his private parts. . . Mr. and Mrs. Gibson . . were living together and have four or five children." It is undisputed that the defendant discovered the deceased on the defendant's wife in the act or just beginning the act of sexual intercourse, commanded him to get up, and immediately shot him. There was no evidence that there was any ill-will between the defendant and the deceased prior to this occasion, or that the defendant killed the deceased for any reason other than because of the act above stated. The defendant introduced no evidence and made no statement.

In *Drysdale* v. *State,* 83 *Ga.* 744 (10 S. E. 358, 6 L. R. A. 424, 20 Am. St. R. 340), headnote 2 is as follows: "A husband may attack for intimacy with his wife in his presence, raising a well-founded belief that the criminal act *is just over or about to begin;* and the adulterer, though in danger, has no right to defend himself

by using a deadly weapon." (Italics ours). There is absolutely nothing in the instant case to show that the defendant knew of previous adulterous acts between his wife and the deceased or that he had ever suspected the fidelity of his wife; but "Even where a husband suspects the fidelity of his wife, he may watch, and may seek and make opportunities to test the correctness of his suspicions; and upon finding that they are true, he may, upon catching the adulterer in the criminal act, or under circumstances showing it has *just taken place* or is *about to begin, justifiably* slay the adulterer." (Italics ours.) *Wilkerson* v. *State,* 91 *Ga.* 734 (17 S. E. 990; 44 Am. St. R. 63). "It has been held that the killing of one who is in the act of adultery with the slayer's wife is within Penal Code § 75; which declares that 'All other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide.'" *Patterson* v. *State,* 134 *Ga.* 266 (67 S. E. 816). In *Cloud* v. *State,* 81 *Ga.* 444 (7 S. E. 641), on the occasion of the homicide the accused saw the deceased and the wife together under circumstances which might justify a belief by him that they were having or about to have sexual intercourse; and the Supreme Court held that it was error for the trial court to refuse to charge that "If the defendant killed the deceased for the purpose of preventing him from having criminal intercourse with defendant's wife; and if the killing was then and there necessary to prevent the deceased from accomplishing his purpose to have criminal intercourse with the defendant's wife, then it would be for you to say whether this would be one of those instances enumerated in sections 4331, 4332, 4333 [now sections 73, 74, 75] of the Code of Georgia, and if you find such to be the case, then you would be authorized to find the killing to be a justifiable homicide, and the defendant not guilty." In *Daniels* v. *State,* 162 *Ga.* 369 (4-a) (133 S. E. 866), the Supreme Court again held that the killing of one in the act of adultery with the slayer's wife is within section 75 of the Penal Code, which refers to instances when the homicide would be justifiable, and goes further and says that "the jury may acquit the slayer of all crime, and *should do so* if they find that the killing was necessary or apparently so, either to prevent the commission of a sexual act or the completion of it." (Italics ours.) In *Biggs* v. *State,* 29 *Ga.* 724 (76 Am. D. 630), the 4th headnote is as follows:

"When the injured husband meets one, *the next morning,* who has attempted over-night, the violation of his marriage bed, and fires upon him, it is right and proper to give in evidence the previous occurrence, as a *justification or excuse for the act."* (Italics ours.) And in the opinion (p. 728, 729) we find the following: "Has an American jury ever convicted a husband or father of murder or manslaughter, for killing the seducer of his wife or daughter? . . What is the annihilation of houses or chattels by fire and faggot, compared with the destruction of female innocence; robbing woman of that priceless jewel, which leaves her a blasted ruin, with the mournful motto inscribed upon its frontals, 'thy glory is departed?' Our sacked habitations may be rebuilt, but who shall repair this moral desolation? How many has it sent suddenly with unbearable sorrow to their graves? In what has society a deeper concern than in the protection of female purity and the marriage relation? The wife can not surrender herself to another. It is treason against the conjugal rights. Dirty dollars will not compensate for a breach of the nuptial vow."

The only witness to the homicide was the defendant's wife, who could not testify. The State proved that the defendant committed the homicide, by proving certain admissions that the defendant made to witnesses a few minutes after the homicide. These statements of the defendant, while showing that he killed the deceased, also embodied certain justification for his act and explanation of his presence in the woods where the homicide was committed. The entire statement was for consideration of the jury. In *Richardson* v. *State,* 70 *Ga.* 827, the Supreme Court, quoting from *Bowie* v. *State,* 19 *Ga.* 7, said: "The rule that, in considering a person's admission, all of the admissions are to be taken together, is one so obvious that a jury would, of themselves, it is to be presumed, follow it." The outstanding, undisputed evidence in this case is that the defendant caught the deceased on the defendant's wife, either just beginning or in the act of adultery. Without regard to the equal guilt of the wife, so far as the crime of adultery is concerned, the interest of her husband, her children, and society is to be taken into consideration, and even she should be protected from her own weakness and the lustful acts of an adulterer. The deceased had invaded the sanctity of the home with all the dire results to that home that accompany such an act. The

law throws every possible safeguard around the home, which is the very foundation of civilization. The court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*