## 27764. LASSITER v. THE STATE.

PER CURIAM. The evidence supported the verdict. The special assignments of error are without merit.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur. Guerry, J., dissents.*

DECIDED DECEMBER 1, 1939.

*Perry & Perry,* for plaintiff in error.

*W. C. Forehand, solicitor-general, J. H. Tipton,* contra.

GUERRY, J., dissenting. James Lassiter was indicted for murder and was convicted of voluntary manslaughter. The evidence, briefly stated, is that the defendant, a negro farmer, went to his home from the field where he and his children were working about the middle of the afternoon and found his house open and his wife away from home. He found her tracks leading across the field to some woods, and when about a hundred yards from the house he saw in the woods his wife and the deceased in the act of adultery. He stated that he knew the deceased carried a pistol and for that reason he did not make an attack on him at the time, but hurried back to his house and got his shotgun and ran back and when he got back, "they were in the act. I spoke to them, I spoke to them and I say, 'Now do you all think you are treating me right?' Whenever I did, this fellow, Ed Gervin, he was not in a hurry about getting up, gentlemen, but when he got up . . he reached . . but I didn't know whether he was reaching for a gun . . but he reached for his clothes to pull them up on him, and then I said, 'Now I am going to try to kill both of you.' Whenever I said that, gentlemen, I shot after him . . and when I did that, I shot after my wife, I was intending to hit her " The deceased was struck in the back by several buckshot and died from the wounds the next day. Statements of the deceased indicated that he and the defendant had had an altercation about some whisky. There was no evidence that the defendant had ever had any previous notice of the alleged illicit relations between the deceased and his wife.

Error is assigned because the court refused to give the following request to charge the jury: "A man may justifiably kill one to prevent the act of adultery with his wife. He may kill while the act is in progress. and the law will justify him; and the law in its

humanity has brought within the terms of section 75 (26-1016) a husband who kills the adulterer immediately after the act has been completed." The court did charge, after reading the section above referred to, the following: "A husband has the right to kill to prevent adultery on the part of his wife, under any circumstances where the jury is authorized to draw the inference that the killing stands upon a footing of reason and justice similar to that enumerated in the doctrine of self-defense. But the paramount defensive essential in such a homicide is protection against an impending danger, which, either actually or as it may reasonably appear to the slayer, can not otherwise be prevented than by the death of the assailant; and to kill in revenge for a past offense, no matter how outrageous and aggravating, is murder. . . We do not think that any man is justifiable in killing another who has committed adultery with his wife, after the adultery has been committed, for that would seem to be killing in a spirit of revenge, which would make it murder." The court then charged on voluntary manslaughter in a sudden heat of passion engendered by such circumstances.

The charge of the court fully covered the law applicable to the facts of the case in respect to justification of a husband in killing one who was about to commit or in the act of committing adultery with the wife. The Supreme Court in *Mays* v. *State*, 88 *Ga.* 399, 402 (14 S. E. 560), has said: "But this court has never held that the husband would be justifiable in killing after the adultery has been committed. . . The jury may acquit of all crime if they find that the killing was done and was necessary at the time either to prevent the commission of the adultery or the completion of it. . . 'If the prisoner saw the deceased in bed with the wife, or saw him leaving the bed of the wife, or if he found them together in such a position as to indicate with reasonable certainty to a rational mind that they had just then committed the adulterous act, . . it will be sufficient to satisfy the requirements of the law in this regard, and if, under such circumstances he then and there struck the mortal blow, his offense would amount to manslaughter only.'"

In analyzing our Code sections dealing with justifiable homicide beginning with § 26-1011 through § 26-1016 I find the predominant idea is self-defense. In § 26-1011 the predominant idea is

with reference to killing by commandment of the law in advancement of public justice, or in reality, for the preservation of society; and as to defense of self, habitation, or property against one who manifestly intends by violence or surprise to commit a felony on either. Preservation or prevention is the predominant principle. § 26-1012 is but an amplification of the principle extending it to cases where the slayer had reasonable grounds to fear that he was to be the victim of a felonious assault, the section itself expressly excluding the idea of revenge. § 26-1013 extended the same principle to habitation or property. § 26-1014 limits the application to the urgency or immediacy of the danger and the immediate necessity for action. § 26-1015 extends its application to close relatives. § 26-1016 provides: "All other instances which stand upon the same footing of reason and justice as those enumerated, shall be justifiable homicide." Before the adoption of this principle the common-law rule prevailed, and a person who killed to prevent illicit intercourse with his wife was not justified absolutely but was guilty of manslaughter. But for the provisions of Code, § 26-1016, as was said in *Wilkerson* v. *State,* 91 *Ga.* 729, 736 (17 S. E. 990, 44 Am. St. R. 63), "The common-law rule would now be of force in this State." The "enumerated instances" are the ones mentioned in the section above referred to. *Hill* v. *State,* 64 *Ga.* 453, 468. The killing, if necessary or apparently so to a reasonable mind at the time in order to protect the wife or other close relatives, would be justifiable. *Miller* v. *State,* 9 *Ga. App.* 599 (71 S. E. 1021).

It is clear that if a jury find that the slayer killed to prevent the act of adultery, or the completion of the act, they may find that such circumstances stand upon a like footing of reason and justice as those enumerated, and would be authorized to acquit. *Mays* v. *State,* supra; *Coart* v. *State,* 156 *Ga.* 536 (5-a, b) (119 S. E. 723). It is also apparent that after the act has been completed and the killing takes place in a spirit of revenge the crime is murder, unless the circumstances were such as to justify the excitement of passion or irresistible impulse which would reduce the offense to manslaughter. *Mays* v. *State,* supra.

The defendant in error in his brief relies chiefly upon the case of *Biggs* v. *State,* 29 *Ga.* 723 (76 Am. D. 630). In that case the court said that a charge "that under no circumstances of aggrava-

tion, however gross and direct, would a man be justifiable in taking the life of another, who attempts the seduction of his wife" (p. 728) was palpable error because the jury would be authorized to find that such circumstances stood on a like footing of reason and justice as those enumerated. The decision went further in the fourth part of the opinion and held that it was error to charge that what had occurred "the night previous to the difficulty at the breakfast table, it could not amount to a justification or excuse for the shooting, the morning after the difficulty." A reading of the record in that case discloses that Biggs, together with another person, concealed himself in a closet in his room at a hotel after having let it be understood that he was leaving town, with expectation of discovering Parish in coming to the room where Biggs's wife was present. Biggs's wife was also familiar with the fact that her husband and the witness were concealed in the closet. Parish came to the room and stayed there nearly an hour, made love to Mrs. Biggs, and attempted to kiss her. Biggs came with a drawn pistol and his witness had a spear and a pistol; Biggs attacked Parish, struck him, and ordered him to leave town. The next morning at the breakfast table Parish was eating breakfast when Biggs and his wife came in, and when Biggs discovered Parish he walked to his chair and assaulted and shot him. Biggs fired five shots and afterwards ran when Parish got out his own pistol and shot at him. The jury found Biggs guilty of shooting at another. I recite these facts to show the extent of the holding in the *Biggs* case. The court held that it was right and proper to give in evidence these facts as an excuse or justification of the act.

The verdict of the jury being only for shooting at another, it would seem that the jury gave consideration to the fact of the excitement of passion, and I do not understand the criticism of the charge in that case. I can not think that the court meant to hold that one who has ordered the attempted seducer of his wife out of town and afterward discovers him eating his breakfast, would be justified in such circumstances in killing him. The verdict rendered seemed to have taken into consideration the "excitement of passion," and the defendant secured the benefit of that. In *Drysdale* v. *State,* 83 *Ga.* 744 (2) (10 S. E. 358, 6 L. R. A. 424, 20 Am. St. R. 340), the court held: "A husband may attack for intimacy with his wife in his presence, raising a well-founded belief that the

criminal act is just over or *about to begin;* and the adulterer, though in danger, has no right to defend himself by using a deadly weapon." (Italics mine.) Under an application of this principle the deceased in the present case would not have been justified in defending himself from the dangerous assault being made against him by the defendant. This court in *Wilkerson* v. *State,* supra, in discussing the *Biggs* case, said in effect that the case was reversed on the third ground therein named alone. On page 734 it was said: "Nay more, the law will sometimes excuse the husband for slaying the seducer of his wife, *immediately after the guilty act is over,* if he acts promptly and in that burst of passionate indignation which overwhelms him upon discovering the outrage which has been done him. . . He may, upon catching the adulterer in the criminal act, or under circumstances showing *it has just taken place* or is about to begin, justifiably slay the adulterer. . . The simple truth is, that while the law may justify a homicide committed for the purpose of preventing adultery, and may excuse a homicide on the part of one who *promptly* resents unto death an unauthorized and totally indefensible invasion of his marital rights, the law never makes justifiable a homicide committed in a spirit of revenge, and for the purpose of revenge only." (Italics mine.)

In the *Wilkerson* case the husband set a trap for the purpose and with the expectation of catching the paramour in the guilty act and then killing him, and the paramour killed the husband when he was attacked. In *Coart* v. *State,* supra, the Supreme Court said: "It has been held that he may justifiably kill to prevent the act; he may kill while the act is in progress, and the law will justify him; and the law in its humanity has brought within the terms of § 75 [26-1016] a husband who kills the adulterer immediately after the act has been completed, the later decision being justified more as a concession to that righteous and justifiable indignation which is a natural concomitant of those holy feelings upon which love of home and the protection of its purity must of necessity rest." See also *Gibson* v. *State,* 44 *Ga. App.* 264 (161 S. E. 158).

I am not unmindful of the fact that these opinions go further than that laid down in the general rule stated in the *Mays* case, supra, and in *Gossett* v. *State,* 123 *Ga.* 431, 434 (51 S. E. 394), where it was said: "But in such cases, whether relating to wife

or daughter, the idea of prevention or defense against an impending or progressing wrong must be involved, in order to render the homicide justifiable." See *Hill* v. *State,* supra. The rule just stated from the *Gossett* case is undoubtedly the correct principle in respect to such cases. I think, however, the use of the word, "immediately," as used in the cases quoted above can easily be given the force and efficacy of a progressing wrong. Immediately on the completion of the act is so much a part of the act and so closely identified with the act that the "law in its humanity" may treat such a killing as a part of the prevention of the crime or the completion of the crime.

Without any intention of indulging in any high-flown language but with a studious avoidance of such effect, I may say that there is no distinction which makes the killing of an adulterer by a husband while engaged in the act different from a killing which takes place as the guilty adulterer rises and attempts to flee. Under such circumstances the wrong against the husband is still progressing, and what is said and done is a part of the res gestæ. The jury at least should be allowed to say whether the killing which, if done the preceding second, may have been justified, was not so nearly connected in time and place as also to be justified although the adulterer was immediately fleeing. This construction to my mind is in consonance with what seems to be a rational reconciliation of the two lines of seemingly divergent opinions. While it is true in the *Mays* case, supra, the court said: "This court has never held that the husband would be justifiable in killing after the adultery has been committed," it will appear from most of the cases where this doctrine has been applied, as in the *Hill* case, supra, that the killing took place sometime after the act of adultery, and could in no sense be said to be a part of a then-progressing wrong, or as is said in reference to self-defense, that the danger was urgent or immediate.

I agree with the trial judge that there are "lines of demarkation in these cases" which "may be hard to arrive at," but under the evidence in the present case I think the defendant was entitled to have the jury say whether an immediate killing, if such they found to be the fact, was not embraced in, and a part of, a progressing wrong being done the husband—such a circumstance as would justify completely using the means he did, rather than merely

to reduce the homicide to manslaughter. A homicide by a husband or wife may be justified if done to prevent the sexual act by one who is attempting the violation of the marriage bed, or to prevent the completion of the act. A husband or wife who discovers the violator of the conjugal rights in the act of such violation, and who kills immediately, although the act of sexual congress has been completed and the violator *immediately* is attempting to flee, may be found not guilty by the jury. The homicide under such circumstances is so nearly connected in time and place with the prevention of the act as to be a part thereof. Under such circumstances the law will not justify "immediately before the completion" of the act, and "refuse to justify the succeeding moment." No such fine-drawn distinctions are demanded; time and place are so nearly related as to prevent such a distinction.

I think the trial court erred in refusing to give in charge the requested instruction, and in overruling the motion of the defendant for a new trial.