27974. THOMPSON *v.* THE STATE.

DECIDED JANUARY 31, 1940.

*Elders & Odum,* for plaintiff in error.

*Ralph L. Dawson, solicitor-general,* contra.

MACINTYRE, J. The defendant was convicted of assault with intent to murder. His motion for new trial was overruled, and he excepted. He introduced no evidence. One of the contentions in his statement to the jury was that Clifford Hendrix, the prosecutor and the person shot, went to the defendant's home while the defendant was not there, made improper proposals to the defendant's wife, and improperly laid his hands upon her; that when the defendant returned home his wife told him about the occurrence; and that he went "across town" to the home of the brother of the prosecutor, called the prosecutor out, and repeated to him what his wife had told him. He stated: "Cliff [the prosecutor] said, 'If your wife told you I said anything to her, excusing to ask where you was gone, she told you a damn lie; and if you believe I said anything to her you are a liar and a son of a bitch;' and I said, 'Cliff, I ain't come here to have a fuss; I come here to talk to you like a man;' and I said, 'I can't swear you said anything to her wrong, so I will let the damn lie go, but take the damn son of a bitch back,' and he said, 'You know I am a damn man, and I don't take nothing back,' and by that time he had his knife and was as close to me as that thing there, and I backed up, and he kept coming toward me, and I said, 'Cliff, go back. I didn't come here for a fuss,' and I kept backing back and him following me; and I said, 'I don't want you to cut me with that knife,' and he just kept following me. I didn't carry that gun to the house. I laid the gun down on the ditch bank where I come up off the railroad, and we were standing in the middle of the yard talking, and he followed me to the edge of the yard, and I stepped back to where the gun was, and he reached back to it like that and seen that I was going to fall in the railroad ditch, and he made a break to run at me, and

I grabbed the gun and shot with one hand back like that, a little .410. Then I run off." Hodges, a witness for the State, testified: "On the afternoon of the day this negro [the prosecutor] was shot, that night I got some information in regard to the defendant here, and I called Mr. Sikes [deputy sheriff] to come there. When Mr. Sikes got there he and I called Clifford [the prosecutor] to come and watch for the car that Robert Thompson was to come back in, and to see if he brought liquor back in it. When the defendant came back he stopped down town, and he and his wife came by the railroad crossing where I was. They were having a quarrel. She did not go off in the car with Robert. The defendant knew when he came back that Clifford had made the report to me, as one of the boys told him."

■ Thus the State's contention was that the defendant shot the prosecutor, not because of anything he had said or done to his wife, but because the prosecutor had been an "informer" against the defendant with reference to a liquor transaction. The State further contended that, even under the defendant's statement, the shooting was not justifiable on account of anything that was said or done by the prosecutor to the defendant at his home on the occasion when he was shot. A witness for the State was allowed to testify that "this place where Thompson [the defendant] lived was reputedly, in that neighborhood, a place where a man could get a drink of whisky," over the objection that it was "immaterial to the question being tried, and put in issue the character of the defendant when he had not offered to do so; and these rulings and this testimony, counsel contends, prejudiced the minds of the jury against said defendant and injured and damaged him." We think the testimony was admissible to illustrate or explain the purpose for which the prosecutor went to the house of the defendant, and to show that it was probable that the prosecutor went there for the purpose of buying whisky. Thus it became admissible to corroborate the prosecutor's testimony that he went to the defendant's home for the purpose of buying whisky. It was admissible for this specific purpose only, and not for the purpose of determining by this alone whether the defendant was guilty of an assault with intent to murder the prosecutor, the crime charged in the indictment. Indeed, the jury were forbidden, although they had evidence of the reputation of the defendant's house as a place where whisky could

be bought, to convict him of an assault with intent to murder "'upon general principles,' as that expression is sometimes used in general parlance." *Green* v. *State,* 172 *Ga.* 635, 640 (158 S. E. 285); *Harrison* v. *State,* 60 *Ga. App.* 610 (4 S. E. 2d, 602); *Bass* v. *State,* 103 *Ga.* 227 (29 S. E. 966); 16 C. J. 608, § 1194; *Crawford* v. *State,* 49 *Ga. App.* 801 (4) (176 S. E. 92).; *Barnes* v. *State,* 57 *Ga. App.* 183 (194 S. E. 839).

■ The court charged the jury as follows: "On the subject of justification I charge you this law: that the law permits and will justify a killing or shooting of another by a husband to prevent seduction of his wife, or to prevent committing with her certain acts of adultery, if a homicide is necessary to prevent the same. In other words, a man may in good faith defend his wife's virtue on the same principle of reason and justice as he may defend his own person, and be justified in doing so if the killing or shooting be necessary to prevent adultery or sexual intercourse on the part of the person killed or shot with the wife of the person killing or shooting; [but the law will not justify him in killing or shooting a man for a past or accomplished intercourse with the wife. A killing or shooting after such act has been completed or when it is not imminent or about to take place is not one of the instances which stand on the same footing of reason and justice as those enumerated in the Code as justifying a homicide.]" (Brackets ours.) The defendant excepted to that part of the charge quoted above in brackets, on the ground that "it was not within the province of the trial judge to say that an indecent proposal to the defendant's wife, accompanied by an overt act, would not justify the defendant in shooting or killing the deceased; for the question as to whether it is an instance standing upon a like footing of reason and justice as the protection of mere property or the protection of one's own person against bodily harm is a question for solution by the jury alone. The above charge took from the jury the right to consider one of the defenses made by said defendant." The Supreme Court in *Perry* v. *State,* 102 *Ga.* 365, 367 (10) (30 S. E. 903), said: "One against whom, or whose wife, an offense, no matter how heinous, has been committed, can not in law be justified 'in taking vengeance in his own hands and in deliberately seeking out and following up the wrong-doer and slaying him.'" The instruction excepted to was not erroneous for any reason as-

signed. *Ellison* v. *State,* 137 *Ga.* 193 (4) (73 S. E. 255) ; *Hill* v. *State,* 64 *Ga.* 453, 468; *Green* v. *State,* 52 *Ga. App.* 290 (4) (183 S. E. 204) ; *Gossett* v. *State,* 123 *Ga.* 431 (51 S. E. 394).

 The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*